143 S.E.2d 791 (1965)
STATE ex rel. Hulett C. SMITH, Governor, State of West Virginia
v.
Truman E. GORE, Commissioner, Finance and Administration, State of West Virginia and Alan Marples, E. D. Knight, Jr., John A. Pianfetti, Mrs. Ellen F. Hartman, Daniel D. Dahill and Keith L. Smith, Intervenors.
No. 12492.
Supreme Court of Appeals of West Virginia.
Submitted July 20, 1965.
Decided September 7, 1965.
*792 C. Donald Robertson, Atty. Gen., H. Clare Hess, Thomas B. Yost, Asst. Attys. Gen., Charleston, for relator.
Claude A. Joyce, J. Patrick Bower, H. Cort Doughty, Jr., Asst. Attys. Gen., Paul J. Kaufman, James B. McIntyre, Charleston, for respondent.
CAPLAN, Judge.
In this original proceeding in mandamus, instituted in this Court on July 13, 1965, the petitioner, Hulett C. Smith, Governor of the State of West Virginia, seeks a writ to compel the respondent, Truman E. Gore, Commissioner of Finance and Administration, to affix his signature to certain contracts requiring the expenditure of state funds which have been entered into by and between the petitioner and certain publishers of newspapers throughout the state. Upon application of the petitioner this Court granted a rule returnable July 20, 1965, at which time the respondent filed his answer to the petition.
On July 19, 1965, certain citizens and taxpayers of this state, namely, Alan Marples and E. D. Knight, Jr., of Greenbrier County, John A. Pianfetti and Mrs. Ellen F. Hartman of Kanawha County, Daniel D. Dahill of Logan County and Keith L. Smith of Lincoln County, filed a petition requesting permission to intervene in this action as parties defendant. The prayer of this petition was granted and the intervenors filed their answer to the petition. On the return day this proceeding was submitted for decision upon the aforesaid pleadings and upon briefs and arguments of counsel for all parties.
This proceeding raises the question of the constitutionality of Chapter 18, Acts of *793 the Legislature, Regular Session, 1965, hereinafter sometimes referred to as the Act. Enacted on March 13, 1965, this Act provides for the calling of a convention having the authority to alter the state constitution. Article 2, Section 1 thereof provides for an election throughout the state for the purpose of taking the sense of the voters on the question of calling a convention having the authority to alter the constitution of the state. Section 2 of said Article 2 requires the Governor to cause a notice of such election to be published one time at least three months before the election in some newspaper of general circulation published in each county of the state. It is further provided therein that the price for publishing such notice shall be agreed upon in advance, in writing, and shall be paid out of the Governor's contingent fund.
Pursuant to those provisions the petitioner caused to be prepared and transmitted to a newspaper of general circulation in each county of this state a solicitation for a bid on the required publication. On the reverse side thereof is printed the response of the publisher wherein he offers to publish the notice at a price thereon designated. Also included on the reverse side are spaces for the approval of the offer by the Governor, the Director of Purchases, the Attorney General and the Commissioner of Finance and Administration. It is undisputed that these solicitations, together with the publishers' responses and approval, as above noted, constitute contracts for the publication of said notices. Several of these contracts were returned with the executed proposals of the publishers and were subsequently approved by the petitioner and the Director of Purchases.
On July 12, 1965, the petitioner forwarded these contracts to the respondent and requested that he affix his signature thereto as required by Code, 1931, 5A-3-15, as amended. By letter of the same date, addressed to the petitioner, the respondent refused to sign the contracts, stating, as the reason for his refusal, that he believed the proposed constitutional convention, as provided for in the Act, to be unconstitutionally apportioned and that such expenditure of state funds would therefore be improper. This action was then instituted to compel the respondent to comply with the provisions of Code, 1931, 5A-3-15, as amended.
It is the position of the petitioner that nothing in our constitution or laws requires equal apportionment of delegates to a constitutional convention and that the Act is therefore constitutional. The respondent and intervenors, on the other hand, contend that equal apportionment of such delegates is an absolute requirement of our constitution; that the proposed convention is unequally apportioned; and that the Act is therefore unconstitutional.
On July 27, 1965, this Court entered an order in this proceeding holding Chapter 18, Acts of the Legislature, Regular Session, 1965, unconstitutional and that the petitioner was not entitled to the writ of mandamus prayed for in his petition. This opinion is now filed for the purpose of stating the reasons for the holdings in the aforesaid order.
It is undisputed that mandamus is the proper remedy in this proceeding. The only question for decision, therefore, is whether it is necessary, under our constitution and laws, to provide for equal representation in the election of delegates to a constitutional convention.
The provision of the Act which gives rise to this controversy is Article 3, Section 3 thereof, entitled "Number of Members to be Elected; Apportionment." That section provides that the constitutional convention shall consist of one hundred six members and purports to apportion such members among the several counties. Thereunder each county in the state is entitled to at least one delegate to the convention, with the more populous counties, in most instances, being allocated a greater number. It is readily conceded by the petitioner that *794 Article 3, Section 3 of the Act does not provide equal representation of the general populace to the convention, his position being, as heretofore noted, that equal representation to a constitutional convention is not required. This concession makes it unnecessary to cite examples of the many instances of inequality in the purported apportionment of delegates to such convention.
The sole issue presented for decision in this proceeding is resolved by the consideration and application of Article II, Section 4 of the Constitution of West Virginia, which reads as follows: "Every citizen shall be entitled to equal representation in the government, and, in all apportionments of representation, equality of numbers of those entitled thereto, shall as far as practicable, be preserved."
That constitutional provision is clear and unambiguous in its meaning. It provides that every citizen shall have equal representation in government. However, the framers of this provision did not stop there. They went on to say "and, in all apportionments of representation, equality of numbers * * *, shall * * * be preserved." We do not see the last quoted portion, as suggested by the petitioner, to be a mere modification of or subordinate to the first clause so that it would apply only to apportionments of representation in government. Rather, it is an independent clause which clearly requires equality in all apportionments of representation whether such apportionments of representation be in a governmental body, in its strict sense, or otherwise.
The petitioner contends that equal representation is required only in government; that government consists of the legislative, executive and judicial branches; and that since a constitutional convention does not fit into any of those categories, equal representation therein is not necessary. With this contention we do not agree. In view of the clear language of the constitution quoted above, "and, in all apportionments of representation", we find it unnecessary to categorize a convention as a part of government in holding that equal representation therein is required. Even though a constitutional convention may not precisely fit into one of the three recognized branches of government, it is such an essential incident of government that every citizen should be entitled to equal representation therein. Clearly, this was the intention of the framers of the present constitution when they formulated Article II, Section 4 thereof.
Where a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed. May v. Topping, 65 W.Va. 656, 64 S.E. 848. The Court, in State v. Conley et al., 118 W.Va. 508, 190 S.E. 908, said: "Where the language used is clear and unambiguous, courts must be governed thereby, and should never attempt to read into a constitutional or statutory provision a meaning which was not intended."
We believe that Article II, Section 4 of our Constitution is clear in its terms and that the intention thereof is manifest from the language used. It provides for equal representation in government and, additionally, in all apportionments of representation. The manner in which representation in the legislature shall be apportioned is specifically prescribed in Article VI of the Constitution. Therefore, the second clause of Article II, Section 4, "and, in all apportionments of representation", refers to something other than the legislature. That an apportionment of representation was intended by the legislature is evident from the language contained in Article 3, Section 3 of the Act. It reads: "The constitutional convention shall consist of one hundred and six members, who shall be apportioned among the several counties as follows: * * *." It then proceeds to allocate to the various counties delegates to the convention without regard *795 to the provisions of Article II, Section 4 of our Constitution which requires equality of numbers in all apportionments of representation.
This action constitutes a violation of Article II, Section 4 of the West Virginia Constitution and compels us to hold that Chapter 18, Acts of the Legislature, Regular Session, 1965, is unconstitutional. To arrive at the proper manner in which delegates to the convention should have been apportioned we need only to look at the Acts of the Legislature of 1871. Chapter 95 of said Acts, calling a constitutional convention, provided for apportionment of delegates thereto as follows: "13. Each county and delegate district, as may be prescribed by law at the time of holding said election, shall elect the same number of delegates, respectively, as they may be entitled to elect as delegates to the House of Delegates, and each senatorial district, as may be prescribed by law at the time of holding said election, shall elect two delegates." This section was written under a constitutional provision identical to Article II, Section 4 of the present constitution. Thus, it is evident that the 1871 Legislature felt constrained, under the constitution, to apportion delegates to the constitutional convention in the same manner as delegates to the legislature were apportioned. This manner of apportionment should have been provided for in Article 3, Section 3 of the 1965 Act.
A further assertion of the petitioner is that equality of representation in a constitutional convention is not necessary for the reason that a convention merely formulates and proposes a constitution and the people have the opportunity to vote on such proposal. First, this is no answer to the plain requirements of Article II, Section 4 of our Constitution. Furthermore, the mere right to approve or disapprove a proposed constitution does not afford to the general public a voice in the formulation thereof. The people are entitled to equal representation when it is determined what that solemn document shall contain, not merely to a bare right of veto.
A constitution is the fundamental law by which all people of the state are governed. It is the very genesis of government. Unlike ordinary legislation, a constitution is enacted by the people themselves in their sovereign capacity and is therefore the paramount law. This basic organic law can be altered or rewritten only in the manner provided for therein. Under the provisions of Article XIV of the West Virginia Constitution this can be accomplished by the legislature or by a convention. In relation to the alteration of the constitution, each of such entities has identical powers and duties. Each may formulate and present for a vote of the people proposed alterations of the constitution. In either case, until the people act such proposals have no force or effect of law.
Thus, it is readily apparent that delegates to a constitutional convention are charged with a tremendous responsibility. They are not mere members of a committee designated by the legislature to formulate changes in the constitution. They are elected representatives of the people. These delegates are required to take the same oath of office as that administered to other state officials. They are paid with public funds and perform a public function. The convention to which these delegates are elected does more than make a mere proposal to the people. It formulates and determines what the constitution shall contain. If such convention is malapportioned, resulting in unequal representation, the people can have no equal voice in the formulation of the fundamental law which they are called upon to enact. The bare right to adopt or veto a proposal does not afford equal representation in the convention as contemplated by Article II, Section 4 of our Constitution. Therefore, this contention is without merit.
The petitioner relies heavily upon West v. Carr, 212 Tenn. 367, 370 S.W.2d 469, *796 cert. den. 378 U.S. 557, 84 S.Ct. 1908, 12 L. Ed.2d 1034, wherein the Tennessee Court held that equal apportionment of delegates to a constitutional convention was not required by that state's constitution. Therein the Court distinguished a constitutional convention from a legislature and concluded that the requirement of equal apportionment of delegates applied only to the latter. Specifically, the Court held that the Act providing for delegates to the constitutional convention did not violate any provision of the Tennessee constitution.
West v. Carr, supra, is inapplicable here and is in no manner controlling. The decision in that case was based solely upon the Tennessee constitution which makes no provision for apportionment of the membership of a constitutional convention, it merely being provided therein that delegates "shall be chosen at the next general election * * * in such mode and manner as shall be prescribed." At no place does the Tennessee constitution contain language in any way similar to that found in Article II, Section 4 of our Constitution, which clearly requires equality in all apportionments of representation.
It is urged by the petitioner that the refusal by the United States Supreme Court to grant certiorari in West v. Carr indicates that the Tennessee Court was correct in holding that equal representation in a constitutional convention is not required. A refusal to grant certiorari has no such significance. It simply means that fewer than four members of the Court, for various reasons, deemed it desirable to review a decision of the lower court. The denial of certiorari by the United States Supreme Court does not indicate approval or disapproval of the decision of a state court. State of Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562.
For the reasons stated the writ prayed for by the petitioner is denied.
Writ denied.