STATE *ex rel.* PATRICK CASEY

*v.*

JACK L. PAULEY, *etc., et al.*

(No. 13537)

Decided January 14, 1975.

*Catsonis, Winter & Linkous, Larry A. Winter, DiTrapano, Mitchell, Lawson & Field, Rudolph L. DiTrapano* for relator.

*Goodwin, Goodwin, Bryan & Lobert, Herbert W. Bryan* for respondent Wood.

*Larry W. Andrews* for respondents Pauley, Kuhns, Black and Castleberry.

BERRY, JUSTICE:

This original proceeding in mandamus was instituted by Patrick Casey against Jack L. Pauley, individually

and as the County Clerk of Kanawha County, Dewey E. S. Kuhns, Thomas Black, and Kelly Castleberry, individually and as Commissioners of the County Court of Kanawha County and ex-officio board of canvassers, and Judge George W. Wood, individually and as incumbent Judge of the Intermediate Court of Kanawha County, West Virginia, to compel the county court as the ex-officio board of canvassers to reconvene for the purpose of certifying the petitioner as the one elected to the office of Judge of the Intermediate Court of Kanawha County in the November 5, 1974 general election. This Court granted a rule in mandamus on November 25, 1974 returnable December 3, 1974 but the case was continued until December 10, 1974. The county court filed a demurrer and the respondent Wood filed an answer to the petition and the case was submitted for decision on the briefs and oral arguments on behalf of the respective parties.

In the November 5, 1974 general election the petitioner, Patrick Casey, the prosecuting attorney of Kanawha County, was the Democratic nominee for the office of Judge of the Intermediate Court of Kanawha County and George W. Wood, who held the office of Judge of the Intermediate Court of Kanawha County before the general election, was the Republican nominee. Judge Wood's term of office was to expire on December 31, 1974. At the general election the petitioner received 31,490 votes and the respondent, George W. Wood, received 23,678 votes. At the same general election on November 5, 1974 the voters of Kanawha County, as well as voters statewide, voted upon the question of ratification of a proposed amendment to the Constitution of West Virginia, which was designated as the Judicial Reorganization Amendment. In Kanawha County the voters voted 30,546 for ratification and 15,579 against ratification of the amendment. The Judicial Reorganization Amendment was ratified by a large majority throughout the state.

On November 18, 1974 the board of canvassers completed its canvas and publicly announced that the petitioner received 31,490 votes and respondent George W.

Wood received 23,678 votes. On November 20, 1974 Jack L. Pauley, the County Clerk of Kanawha County, submitted the certificate of election results to the board of canvassers. However, the certificate of election results omitted the results with respect to the office of Judge of the Intermediate Court of Kanawha County. Jack L. Pauley stated in an accompanying letter to the board of canvassers: "The ratification of the Judicial Reform Amendment raises certain questions concerning the expiration of the term of office of incumbent Judge George W. Wood. Until these questions are finally resolved, I would withhold certification of Patrick Casey as the winner of that election." The board of canvassers then certified the results of the November 5, 1974 general election, omitting certification of the results of the office of Judge of the Intermediate Court of Kanawha County.

The petitioner asked the board of canvassers, by letter, to reconvene and certify him as the winner of the office of Judge of the Intermediate Court of Kanawha County. However, the board of canvassers wrote a letter to the petitioner informing him that the ratification of the Judicial Reorganization Amendment raised certain questions concerning the date of expiration of Judge Wood's term of office and refused to certify the petitioner as winner of that election until the questions were resolved by a court of competent jurisdiction.

Article VIII, Section 5 of the amendment which was ratified by the voters on November 5, states that: "* * * each statutory court of record of limited jurisdiction existing in the State immediately prior to such effective date shall become part of the circuit court for the circuit in which it presently exists, and each such judge of such statutory court of record of limited jurisdiction shall thereupon become a judge of such circuit court." Article VIII, Section 7 provides that:

> "Any justice of the supreme court of appeals and any judge of any circuit court, including any statutory court of record of limited jurisdiction which becomes a part of a circuit court by virtue

of section five of this article, in office on the
effective date of this article shall continue in of-
fice until his term shall expire, unless sooner
removed or retired as authorized in this article:
Provided, That as to the term of any judge of a
statutory court of record of limited jurisdiction
which does not expire on the thirty-first day of
December, one thousand nine hundred seventy-
six, the following provisions shall govern and
control unless any such judges shall be sooner
removed or retired as authorized in this article:
(1) If the term would otherwise expire before the
thirty-first day of December, one thousand nine
hundred seventy-six, such term shall continue
through and expire on said thirty-first day of
December, one thousand nine hundred seventy-
six (2) if the term would otherwise expire on the
first day of January, one thousand nine hundred
seventy-seven, such term shall terminate and ex-
pire on the thirty-first day of December, one
thousand nine hundred seventy-six, and (3) if the
term would otherwise expire after the thirty-first
day of December, one thousand nine hundred
seventy-six, but other than on the first day of
January, one thousand nine hundred seventy-
seven, such term shall continue through and ex-
pire on the thirty-first day of December, one
thousand nine hundred eighty-four."

The threshold question to be answered in this proceed-
ing is whether or not mandamus is a proper remedy in a
case of this kind. Mandamus cannot be used for the trial
of an election contest case in the first instance. *State ex
rel. Booth v. State Board of Ballot Commissioners*, ____
W. Va. ____, 196 S.E.2d 299 (1973). There is no question
that the petitioner received the greater number of votes
for the office for which he was a candidate at the No-
vember 5, 1974 election and the election itself is not
contested. The certificate of election and the certificate
of the results of the election were withheld as to the
petitioner because of certain questions raised by the
respondents. It is true the board of canvassers cannot
determine constitutional questions or interpret a consti-

tutional amendment. *Dickinson v. Thorn*, 102 W. Va. 673, 135 S.E. 478 (1926). However, the certification of the results of an election by a board of canvassers is a non-discretionary duty and mandamus lies to require the discharge of such duty by public officials. Mandamus lies to compel a board of canvassers to perform its legal duty. Code 3-1-45, as amended. *Duncan v. Cabell County*, 138 W. Va. 106, 75 S.E.2d 97 (1953); *State ex rel. Bumgardner v. Mills*, 132 W. Va. 580, 53 S.E.2d 416 (1949). This Court has held that mandamus may be used to determine constitutional questions. *State ex rel. City of Charleston v. Coghill*, ____ W. Va. ____, 207 S.E.2d 113 (1973); *State ex rel. Building Commission v. Moore*, ____ W. Va. ____, 184 S.E.2d 94 (1971); *State ex rel. County Court v. Demus*, 148 W. Va. 398, 135 S.E.2d 352 (1964); *State ex rel. County Court v. Bane*, 148 W. Va. 392, 135 S.E.2d 349 (1964).

It is agreed by the parties in this proceeding that the date of the ratification of the Judicial Reorganization Amendment was November 5, 1974, the date of the election. Under the law, this is the date a constitutional amendment becomes effective unless another date is otherwise specified in the amendment. *State ex rel. O'Connell v. Duncan*, 108 Mont. 141, 88 P.2d 73 (1939); *Whitcomb v. Young*, 279 N.E.2d 566 (Ind. 1972). The provisions of the Judicial Reorganization Amendment pertinent to the questions raised in this proceeding are self-executing since no legislation is necessary to give effect to the provisions. *See, Kneip v. Herseth*, 214 N.W.2d 93 (S.D. 1974); *Appeal of Crescent Precision Products, Inc.*, 516 P.2d 275 (Okla. 1973); *Haile v. Foote*, 901 Idaho 213, 409 P.2d 409 (1965).

It is clear from the pertinent provision of the Judicial Reorganization Amendment that the term of office of the respondent George W. Wood is extended through December 31, 1976. This is clearly provided for in the following language of section 7: "Any justice of the supreme court of appeals and any judge of any circuit court, including any statutory court of record of limited jurisdiction which becomes a part of a circuit court by

virtue of section five of this article, in office on the effective date of this article shall continue in office until his term shall expire, * * * Provided, That as to the term of any judge of a statutory court of record of limited jurisdiction which does not expire on the thirty-first day of December, one thousand nine-hundred seventy-six, the following provisions shall govern and control * * * (1) If the term would otherwise expire before the thirty-first day of December, one thousand nine hundred seventy-six, such term shall continue through and expire on said thirty-first day of December, one thousand nine hundred seventy-six * * *."

The respondent George W. Wood was a judge of a statutory court of limited jurisdiction immediately before the ratification of the Judicial Reorganization Amendment, and his term of office expired on December 31, 1974. Therefore, his term would otherwise expire before December 31, 1976 but for the Judicial Reorganization Amendment. Therefore, his term continues through, and expires on, said thirty-first day of December, nineteen hundred seventy-six. No language could be clearer than the quoted language extending Judge George W. Wood's term of office from December 31, 1974 through December 31, 1976. Courts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution. *Parkin Printing and Stationery Co. v. Arkansas Printing & Lithographing Co.*, 234 Ark. 697, 354 S.W.2d 560 (1962).

If a constitutional provision is clear in its terms and unambiguous in its meaning this Court must apply, and not interpret, the provision. *State ex rel. Smith v. Gore*, 150 W. Va. 71, 143 S.E.2d 791 (1965); *State ex rel. Zickefosse v. West*, 145 W. Va. 498, 116 S.E.2d 398 (1960). This principle is clearly stated in point 3 of the syllabus of the *State ex rel. Smith v. Gore, supra,* case in the following language: "Where a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and

not construed." *See, Richardson v. Ramirez,* U.S., 94 S.Ct. 2655, ____ L.Ed.2d ____ (1974).

There is no question that terms of office can be extended by the vote of the people ratifying a constitutional amendment. *Haile v. Foote, supra; State ex rel. O'Connell v. Duncan, supra; State ex rel. Mathews v. Houndersheldt,* 151 Minn. 167, 186 N.W. 234 (1922); *Whitcomb v. Young, supra.* The case of *Wingate v. Flynn,* 139 Misc. Rep. 779, 249 N.Y.S. 351 (1931), cited by the petitioner, presents a different situation from that in the case at bar. In that case the judicial amendment became effective after the election of the judge.

It is abundantly clear that the provisions of section 7 of the Judicial Reorganization Amendment ratified by the people on November 5, 1974 extended the term of the respondent George W. Wood for a period of two years. Therefore, the respondent George W. Wood not only became a circuit judge on November 5, 1974 under the clear and unambiguous provisions of section 5 and section 7 of the Judicial Reorganization Amendment but his term of office under which he was serving was also increased or extended for a period of two years.

It would also appear from the clear provision of Section 5 of the Judicial Reorganization Amendment that the petitioner, Patrick Casey, was also elected to a full term as a circuit judge. The pertinent provision of section 5 reads as follows: "Upon the effective date of this article, each statutory court of record of limited jurisdiction existing in the State immediately prior to such effective date shall become part of the circuit court for the circuit in which it presently exists, * * *." The regular term of the Intermediate Court of Kanawha County expires on December 31, 1974 and it was necessary to have a candidate for such office voted upon at the election held on November 5, 1974. If the Judicial Reorganization Amendment had been rejected by the people on November 5, 1974 the Intermediate Court of Kanawha County would still be in existence. However, simultaneously with the ratification of the Judicial Reorganiza-

tion Amendment the petitioner, Patrick Casey, was elected by a vote of the people. Although placed on the ballot as Judge of the Intermediate Court of Kanawha County, the petitioner was in effect elected to the office of Judge of the Circuit Court by virtue of the ratification of the Judicial Reorganization Amendment. The provisions of section 7 of the Judicial Reorganization Amendment extended the term of office of the respondent Judge George W. Wood as a circuit judge for a period of two years, and, therefore, by virtue of the amendment drafted by the legislature and ratified by the people and the petitioner's election, an additional circuit judge in Kanawha County, the Thirteenth Judicial Circuit, was created and both the petitioner Patrick Casey and the respondent George W. Wood are now circuit judges for the Thirteenth Judicial Circuit. To hold otherwise would charge the legislature for being responsible for thwarting the will of the people and disenfranchising them.

The legislature has the authority under the provisions of Article VIII, section 5 of the Judicial Reorganization Amendment to determine not only the number of circuits but the number of circuit judges to serve in such circuits.

For the reasons stated herein, the writ of mandamus, as molded, will issue directing the respondent Jack L. Pauley to prepare a separate certificate of election of petitioner Patrick Casey to the office of Judge of the Thirteenth Judicial Circuit of West Virginia, and deliver to the commissioners of the county court who are directed to reconvene as a board of canvassers, enter a proper certification order, and issue to the petitioner Patrick Casey a separate certificate of election to the office of Judge of the Thirteenth Judicial Circuit.

*Writ awarded.*

SPROUSE, JUSTICE, *concurring:*

I concur with the opinion of the majority issuing the writ of mandamus which compels the certification of Patrick Casey as judge of the 13th Judicial Circuit. I

respectfully disagree, however, that Section 7 of Article VIII creates an additional circuit judge for the 13th Circuit.

It is true, of course, that where constitutional provisions are clear in their terms and unambiguous in their meaning, the provisions will be literally applied and not interpreted. It is also true, however, that where a constitutional provision is not clear, resort must be had to construction. 16 Am. Jur. 2d *Constitutional Law*, Section 58, pages 230-31. *See also*, 16 Am. Jur. 2d *Constitutional Law*, Section 76, pages 258-59, wherein it is said: "* * * [C]onstitutional language will not be construed in such a way as to lead to an absurd result * * *. Absurd results must be avoided even if this entails a disregard of the plain meaning of the constitution." *See also, Schaefer v. Thomson*, 240 F. Supp. 247, 252 (D.C. Wyo.), where that federal district court, in interpreting a provision of the Wyoming Constitution stated:

> "While the wisdom or policy of constitutional provisions are not to be questioned, still courts are not to act in a manner which brings about * * * palpable absurdities. * * *
>
> \* \* \*
>
> "* * * None of the recent cases in this area require that a federal court adhere blindly to state law when to do so would produce a ridiculous result or perpetrate a manifest injustice upon a state and its people." *Schaefer v. Thomson, supra* at footnote 9.

The Supreme Court of the United States, through an opinion of Chief Justice Marshall, spoke early on this point. It held that, if a literal reading of the words of a constitution leads to absurd results or results in an injustice to the public, then the true intention is to be sought from the spirit of the constitution by reading its entire collected wording.

It is difficult to conceive a greater ambiguity than the juxtaposition of statutory language creating another

two-year judgeship for Kanawha County. It is not a reasonable interpretation of the Constitution to thwart the will of the electorate expressed by the ballot—defeating one candidate for judge and electing another. The history of this constitutional proposal nowhere suggests such a result.

"It is settled that in placing a construction on a constitution or any clause or part thereof, a court may look to the history of the times and examine the state of things existing when the constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy." 16 Am. Jur. 2d *Constitutional Law*, Section 87, pages 270-71. "The question in interpreting a constitution is not so much how it was understood by its framers as how it was understood by the people adopting it, * * *." 16 Am. Jur. 2d *Constitutional Law*, Section 88, page 274.

It is abundantly clear from the very recent history of the legislative and public action, amending this part of our Constitution, that there was no intention or understanding to add to the number of judges except by future legislation. This is also explicit from the constitutional instrument itself.

We must, of course, construe the amendment as a whole and not in isolated parts. See 16 Am. Jur. 2d *Constitutional Law*, Section 66, page 242, which states: "In construing a constitutional provision, it is the duty of the court to have recourse to the whole instrument, if necessary, to ascertain the true intent and meaning of any particular provision. * * *"

There was nothing in the proposed Article VIII submitted for ratification on November 5, 1974 that suggested to the people of Kanawha County or West Virginia that they were voting for two intermediate court judges, nor for the election of one intermediate court judge for one full term and for an extension of an incumbent intermediate court judge for an additional two years. The only provisions of Article VIII relating to election of judges are the general provisions contained

in Section 2 and Section 5. Section 2 provides that "[t]he justices shall be elected by the voters of the State for a term of twelve years * * *." Section 5 provides that "[t]he judge or judges of each circuit court shall be elected by the voters of the circuit for a term of eight years, * * *." While Section 5 states that "[t]he Legislature may increase, or other than during the term of office decrease, the number of circuit judges within a circuit," the same provision specifically provides that "[t]he judicial circuits in existence on the effective date of this article shall remain as so constituted until changed by law * * *." After November 5, 1974, the effective date of the new Article VIII, the Legislature could increase the number of circuit judges in Kanawha County. It had no such constitutional power prior to that time. It is clear, then, that if an additional judgeship was created, it was by the language of the constitutional amendment itself. As the quoted language indicates, there is no reference to an extra judge for Kanawha County. The entire structure of the amendment negatives such an inference—specific circuits and numbers of judges are nowhere mentioned, rather there is a general uniform plan or scheme for judicial circuits throughout the State. Concerning the number of judges in the State, the Judicial Reorganization Amendment emphasizes the status quo. It specifically leaves to the future any change in the number of judges in any circuit, charging the Legislature to make any such needed changes by law.

The majority opinion stresses the language of Section 7 extending the term of the intermediate court to 1976. The tenure of a judge or a court and the term of the court are certainly not synonymous. There are often two or more judges having tenure in one statutory term of a court. The obvious example is created by the death or resignation of an incumbent judge midway through his term of office. An appointed judge would serve a portion of that same term until the next election, and he in turn may be defeated by a third judge for the third portion of the unexpired term. Section 7 provides for such contingencies.

So here the meaning of this constitutional phrase is to extend the term of the Intermediate Court of Kanawha County until 1976. Judge Wood's tenure in that term, however, was terminated in 1974 by the voters of Kanawha County. Simultaneously Patrick Casey was elected to a full eight-year term commencing in 1974 and expiring in 1982. Whether this term would be extended to 1984 is not a question presented on this appeal. I believe this is a logical interpretation of the special language extending the term. The spirit and meaning of Article VIII, as a whole, conclusively supports this interpretation.

Sections 1 through 15 of the new Article VIII, contain not the slightest intimation that an extra circuit judgeship was created for Kanawha County for a period of two years or otherwise. There is not the slightest intimation that the specific will of the electorate is to be constitutionally "altered". To so interpret a constitutional provision is counter to the basic concepts of a democratic society. If the Legislature desired to recommend to the people the constitutional creation of another judgeship, it could have done so. If we are to interpret this as its intention, it should be from clear and unmistakable language.