424 S.E.2d 738

**JARRETT PRINTING COMPANY, Petitioner,**

v.

**Ronald RILEY, as Director of the Purchasing Division of the Department of Administration of the State of West Virginia; Gaston Caperton, as Governor of West Virginia; and BJW Printing and Office Supplies, Respondents.**

**No. 21477.**

Supreme Court of Appeals of West Virginia.

Submitted Dec. 2, 1992.

Decided Dec. 9, 1992.

Charles McElwee, Robinson & McElwee, Charleston, for petitioner.

Jeffrey Matherly, Deputy Atty. Gen., and Charles Lorensen, Mark Ferguson, George, Ferguson & Lorensen, Charleston, for respondents.

NEELY, Justice.

■ In this case, we are presented with a petition for a writ of mandamus under our original jurisdiction. We are asked to determine whether the constitutional provision that prohibits state legislators and officers from having any interest in legislative printing contracts bars an award of such a contract to the spouse of a legislator. We find that a legislator who is the spouse of an owner of a contracting printer does have an interest in such a contract. Therefore, the petition for writ of mandamus is denied.

On 15 July 1992, at the opening of sealed bids in response to a solicitation for specified printing and binding services for the West Virginia House of Delegates, Jarrett Printing was deemed the lowest responsible bidder. The sole shareholder of Jarrett Printing is H. Jarrett Walker. Mr. Walker is the husband of Martha Walker. Martha Walker was a member of the House of Delegates until December 1, 1992; she is currently a member of the State Senate.[1]

---

**1.** Senator Walker also has been an active participant in the business of Jarrett Printing. As recently as 1991, Senator Walker served as Vice President of Sales for Jarrett Printing, and in each of her financial disclosure statements since she joined the legislature she has listed Jarrett Printing as her main source of income. Fur-

thermore, Mrs. Walker listed on her 1991 financial disclosure statement that she, via Jarrett Printing, sold printing and promotional items to "various state agencies," and had "printing sales" to "various municipalities." In the recent past, Mrs. Walker has been an officer and an active participant in Jarrett Printing; she now

Upon realizing the potential constitutional violation, the Speaker of the House, The Honorable Robert Chambers, decided that *W.Va. Const.* Art. 6, § 34, disqualified Jarrett Printing and suggested to Ronald Riley, Director of the Purchasing Division, that the contract should be awarded to BJW Printing.

 Before making his final decision, the Governor of West Virginia, The Honorable Gaston Caperton, requested an opinion from the attorney general about the applicability of *W.Va. Const.* Art. 6, § 34 to Jarrett Printing. The attorney general issued an opinion, dated 10 November 1992, that determined that awarding the contract to Jarrett Printing would violate *W.Va. Const.* Art. 6, § 34. Thereafter, the Governor wrote to Mr. Walker and informed him that he would have approved the contract were it not for the attorney general's opinion. Upon receiving that notice, Jarrett Printing petitioned this court, asking for a writ of mandamus to compel the respondents to let, and approve the letting of, the legislative printing contract to Jarrett Printing.

*W.Va. Const.* Art. 6, § 34 provides:

The legislature shall provide by law that the fuel, stationery and printing paper, furnished for the use of the State; the copying, printing, binding and distributing the laws and journals; and all other printing ordered by the legislature, shall be let by contract to the lowest responsible bidder, bidding under a maximum price to be fixed by the legislature; and *no member or officer thereof, or officer of the State, shall be interested, directly or indirectly, in such contract,* but all such contracts shall be subject to the approval of the governor, and in case of his disapproval of any such contract, there shall be a reletting of the same in such manner as may be prescribed by law. [Emphasis added]

When we interpret a constitutional provision, we must keep in mind that, "[w]here a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed." Syl. Pt. 3, *State ex rel. Smith v. Gore,* 150 W.Va. 71, 143 S.E.2d 791 (1965). Furthermore, "[c]ourts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution." Syl. Pt. 3, *State ex rel. Casey v. Pauley,* 158 W.Va. 298, 210 S.E.2d 649 (1975).

 Here, the plain and unambiguous meaning of *W.Va. Const.* Art. 6, § 34, is to prohibit a legislator from having *any interest* in a legislative printing contract. It makes no difference that the Legislature, under the current legislative scheme, has removed itself from the direct decision-making in the award of contracts, and instead authorized the Department of Administration to determine the "lowest responsible bidder." *W.Va.Code* 5A–3–22 [1990]. The *Constitution* itself requires that the "lowest responsible bidder" be used, and *still* contains the prohibition on legislators' having any interest in the printing contracts. *W.Va. Const.* Art. 6, § 34.

Furthermore, it is important to recognize that the purpose of *W.Va. Const.* Art. 6, § 34, is not to define the border between ethical and unethical behavior; it is a prophylactic measure, the goal of which is to ensure that the government of West Virginia is above the appearance of impropriety. We have recognized this as a valid motive for imposing restrictions on government employees that go far beyond prohibiting actual bad conduct:

[The] conduct was unlawful because forbidden by statute or was *malum prohibitum* as distinguished from *malum in se* .... [I]t goes far beyond imposing a penalty on actual corruption. It recognizes as a matter of public policy that a pecuniary interest might, and in many instances would, subject members of boards of education to harmful suspicion of corruption and that in some instances there would be created a borderland where the distinction between honesty and corruption would not be pronounced.

claims to have resigned from all active participation in Jarrett Printing.

*Hunt v. Allen,* 131 W.Va. 627, 635, 53 S.E.2d 509, 514 (1948).

We find it disingenuous to state that a legislator has absolutely no interest in whether his or her spouse receives a government contract. As we held in *Haislip v. White,* 124 W.Va. 633, 642, 22 S.E.2d 361, 365–66 (1942):

> We prefer to rest our decision on the broad principle that there is still a relation existing between husband and wife, and mutual liabilities growing out of the family relation, which creates, on the part of each, an interest in the contracts of the other, out of which compensation arises, and the proceeds of which are used directly or indirectly within the family circle.

Nor is it peculiar to determine that one spouse has an interest in the assets of the other. For tax purposes, transfers of property between spouses do not trigger Federal estate or gift taxes. 26 *U.S.C.* § 2056; 26 *U.S.C.* § 2513. Furthermore, married people are barred from generating losses by selling property to one another at a loss. 26 *U.S.C.* § 267; 26 *U.S.C.* § 318. Moreover, most pension benefits and social security benefits earned by one spouse inure to the benefit of the other spouse even after the death of the spouse who worked to create the benefits. Finally, *W.Va.Code* 42–3–1, *et seq.,* [1992] provides that a spouse has a right to a share of the other spouse's assets at death.

We cannot avoid the plain meaning of *W.Va. Const.* Art. 6, § 34. If the provision is not as applicable today as it once was, a constitutional amendment would remedy the situation. As the *Constitution* currently reads, the award of a legislative printing contract to the spouse of a legislator violates the plain meaning of the provision. Accordingly, the petition for a writ of mandamus is denied.

Writ Denied.