715 S.E.2d 36

STATE of West Virginia ex rel. WEST
VIRGINIA CITIZEN ACTION
GROUP, Petitioner

v.

Earl Ray TOMBLIN, President of the
West Virginia Senate, Richard Thomp-
son, Speaker of the West Virginia House
of Delegates, and Natalie Tennant, Sec-
retary of State of West Virginia, Re-
spondents.

Kenny Perdue, President of the West
Virginia AFL–CIO, Intervener

and

State of West Virginia ex rel. Thornton
Cooper, Petitioner

v.

Earl Ray Tomblin, Acting Governor of the
State of West Virginia, And President of
the West Virginia Senate, Richard
Thompson, Speaker of the West Virginia
House of Delegates, and Natalie Ten-
nant, Secretary of State of West Virgi-
nia, Respondents

Kenny Perdue, President of the West
Virginia AFL–CIO, Intervener.

Nos. 101494, 10–4004.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 2011.

Decided Jan. 18, 2011.

Kathryn Reed Bayless, Esq., Bayless Law Firm, Princeton, WV, for West Virginia Citizen Action Group.

Thornton Cooper, Esq., South Charleston, WV, Pro Se.

Thomas P. Maroney, Esq., Maroney, Williams, Weaver & Pancake, Charleston, WV, for Kenny Perdue, As President of the West Virginia AFL–CIO.

Lisa A. Hopkins, Esq., General Counsel West Virginia State Auditor's Office, Charleston, WV, for Amicus Curiae Glen B. Gainer, III, Auditor of the State of West Virginia.

Charles McElwee, Esq., Charleston, WV, Amicus Curiae Pro Se.

James M. Haviland, Esq., Charleston, WV, for Amicus Curiae West Virginia Education Association.

Thomas V. Flaherty, Esq., Tammy R. Harvey, Esq., Caleb P. Knight, Esq., Flaherty Sensabaugh Bonasso.

Ray Ratliff, Esq., Charleston, WV, for Earl Ray Tomblin, Acting Governor of the State of West Virginia, and President of the West Virginia Senate.

Anthony J. Majestro, Esq., Powell & Majestro, Charleston, WV, for Richard Thompson, Speaker of the West Virginia House of Delegates.

Darrell V. McGraw, Jr., Esq., Attorney General, Silas B. Taylor, Esq., Senior Deputy Attorney General, Charleston, WV, for Natalie E. Tennant, Secretary of State of West Virginia.

BENJAMIN, Justice:

In this original jurisdiction action, the petitioners seek a writ of mandamus compelling the respondents to call a special election as soon as practicable in 2011 to fill the vacancy in the office of governor created on November 15, 2010, when former Governor Joe Manchin, III, resigned from that office to assume the office of United States Senator. Petitioners herein are the West Virginia Citizen Action Group,[1] Thornton Cooper,[2] and Kenny Perdue,[3] as President of the West Virginia AFL–CIO. Respondents are Earl Ray Tomblin as Senate President and in his capacity in fulfilling the constitutional role to act as governor during the current vacancy, Richard Thompson as Speaker of the House of Delegates, and Natalie E. Tennant as Secretary of State.[4]

After careful consideration of the parties' pleadings and oral arguments, as well as the briefs of *amici curiae,* and the applicable law, and for the reasons that follow, this Court denies the writ of mandamus requested by the petitioners with regard to Respondent Thompson and Respondent Tennant. We grant the petition with regard to Respondent Tomblin, and we direct Respondent Tomblin, in fulfilling his role to act as governor during the current vacancy, to forthwith issue a proclamation fixing a time for a new statewide election for governor consistent with. *W. Va. Const.,* art. VII, § 16 and W. Va.Code § 3–10–2 (1967).

## I.

### FACTS

The facts of this case as represented by the parties are brief and undisputed. Former Governor Joe Manchin, III, was elected to a second four-year term of office at the general election on November 4, 2008. That term began on January 19, 2009, and is scheduled to end on January 14, 2013.

On June 28, 2010, United States Senator Robert C. Byrd passed away. A special election to fill the Senate vacancy created as a result of Senator Byrd's death was held on November 2, 2010, and former Governor Manchin was elected to fill the Senate vacancy.

On November 15, 2010, former Governor Manchin resigned as governor and was sworn in as United States Senator. His resignation created a vacancy in the office of governor. On the same day that former Governor Manchin resigned, State Senate President and Respondent herein, Earl Ray Tomblin, began to act as governor pursuant to *W. Va. Const.,* art. VII, § 16 and W. Va.Code § 3–10–2.

A question thereafter arose with regard to when a new statewide election must be held under our law to fill the vacancy in the office of governor. The next general election will be held in November 2012. The petitioners seek a writ of mandamus to compel the holding of a new election as soon as practicable in 2011. This Court subsequently issued a rule

1. In its brief to this Court, the West Virginia Citizen Action Group describes itself as a nonprofit, incorporated association which advocates for better public policy, rights of individuals, a clean environment, and a stronger democratic process.

2. Mr. Cooper explains that he is a native, resident, and registered voter of South Charleston in Kanawha County. He further indicates that he is a property owner and taxpayer.

3. Mr. Perdue moved to intervene in this matter. This Court subsequently granted his motion to intervene and granted leave for him to participate in this matter as a party petitioner.

4. This Court recognizes and appreciates the contributions to the consideration of this case made by *amici curiae* West Virginia Education Association, Charles McElwee, Esq., and Glen B. Gainer, III, West Virginia State Auditor.

to show cause returnable before this Court for oral argument to be heard on January 11, 2011.

The sole issue before this Court is narrow and straightforward-when, under our law, shall a statewide public election take place to fill the current vacancy in the office of governor?

## II.

## STANDARD OF REVIEW

▮▮▮▮ The petitioners in this case seek a writ of mandamus. This Court has explained that the purpose of mandamus is to enforce "an established right" and a "corresponding imperative duty created or imposed by law." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 398, 540 S.E.2d 917, 922 (1999) (citation omitted). In determining the appropriateness of mandamus in a given case, our law is clear that

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). This Court will consider the question before us in light of these principles.

## III.

## DISCUSSION

This case rests upon the interpretation of a provision of our state constitution and a statute. The applicable constitutional provision is *W. Va. Const.*, art. VII, § 16, which provides:

> In case of the death, conviction on impeachment, failure to qualify, resignation, or other disability of the governor, the president of the senate shall act as governor until the vacancy is filled, or the disability removed; and if the president of the senate, for any of the above named causes, shall become incapable of performing the duties of governor, the same shall devolve upon the speaker of the house of delegates; and in all other cases where there is no one to act as governor, one shall be chosen by joint vote of the legislature. **Whenever a vacancy shall occur in the office of governor before the first three years of the term shall have expired, a new election for governor shall take place to fill the vacancy.**

(Emphasis added.) The applicable statute is W. Va.Code § 3–10–2, the relevant portion of which provides:

> In case of the death, conviction or impeachment, failure to qualify, resignation or other disability of the governor, the president of the Senate shall act as governor until the vacancy is filled or the disability removed; and if the president of the Senate, for any of the above-named causes, shall be or become incapable of performing the duties of governor, the same shall devolve upon the speaker of the House of Delegates; and in all other cases where there is no one to act as governor, one shall be chosen by the joint vote of the Legislature. **Whenever a vacancy shall occur in the office of governor before the first three years of the term shall have expired, a new election for governor shall take place to fill the vacancy.** If the vacancy shall occur more than thirty days next preceding a general election, the vacancy shall be filled at such election and the acting governor for the time being shall issue a proclamation accordingly, which shall be published prior to such election as a Class II–0 legal advertisement in compliance with the provisions of article three [§§ 59–3–1 et seq.], chapter fifty-nine of this code, and the publication area for such publication shall be each county of the state. But if it shall occur less than thirty days next preceding such general election, and more than one year before the expiration of the term, such acting governor shall issue a proclamation, fixing a time for a special election to fill such vacancy, which shall be published as hereinbefore provided.

(Emphasis added.)

It is the position of the petitioners that the new election mandated by art. VII, § 16 of the Constitution must occur as soon as is

practicable in 2011. According to the petitioners, art. VII, § 16 is clear that the arrangement wherein the senate president acts as governor is temporary and that a new election for governor must speedily take place to fill the vacancy when, as in the present case, the vacancy in the governor's office occurs during the first three years of the term. Petitioners further contend that other constitutional provisions, such as the one providing for separation of powers, are consistent with construing art. VII, § 16 as providing for only the shortest practicable period during which the senate president shall act as governor. Respondent Thompson supports the position of the petitioners.

Respondent Tomblin replies that *W. Va. Const.*, art. VII, § 16 was enacted at a time when a general election was held annually. This is the reason for the distinction made between a vacancy occurring in the first three years of the term and one occurring in the final year of the term. Respondent Tomblin explains that if the vacancy occurred in the first three years of the term, the vacancy simply could be filled in the next general election to occur that same year. Because each general election which occurred in the first three years of the governor's four-year term was not a regularly scheduled gubernatorial election, Respondent Tomblin argues that art. VII, § 16 refers to the election as a "new election." However, according to Respondent Tomblin, if the vacancy occurs in the final year of the term, the election to fill the vacancy would be held in the regularly scheduled gubernatorial election. Even though general elections are now held every two years,[5] Respondent Tomblin asserts that the language of art. VII, § 16 remains the same and must be read accordingly. According to the statute, "[i]f the vacancy shall occur more than thirty days next preceding a general election, the vacancy shall be filled at such election." Under the present facts, the vacancy occurred more than thirty days next preceding a general election. Respondent Tomblin further contends that *W. Va. Const.*, art. VII, § 16 should be read in *pari materia* with *W.Va. Const.*, art. IV, § 7, which provides, in part, that "[w]hen vacancies occur

prior to any general election, they shall be filled by appointments, in such manner as may be prescribed herein, or by general law, which appointments shall expire at such time after the general election as the person so elected to fill such vacancy shall be qualified." Respondent Tomblin asserts that the filling of the vacancy in the office of governor by the Senate President pursuant to *W. Va. Const.*, art. VII, § 16, is effectively a constitutional appointment which can last in duration until after the next general election in November 2012. Respondent Tomblin therefore posits that the election to fill the vacancy in the office of governor does not have to occur until November 2012. Accordingly, Respondent Tomblin concludes that because he has no duty under our law to call a new election prior to November 2012, this Court should deny the writ sought against him.

■ This Court begins our analysis by examining the language of *W. Va. Const.*, art. VII § 16. *See Randolph County Bd. of Educ. v. Adams*, 196 W.Va. 9, 15, 467 S.E.2d 150, 156 (1995) (explaining that "[t]he starting point in every case involving construction of our Constitution is the language of the constitutional provision at issue" (citation omitted)). We previously have recognized that "[t]he provisions of the Constitution, the organic and fundamental law of the land, stand upon a higher plane than statutes, and they will as a rule be held mandatory in prescribing the exact and exclusive methods of performing the acts permitted or required." Syllabus Point 2, *Simms v. Sawyers*, 85 W.Va. 245, 101 S.E. 467 (1919). This Court also has indicated:

> The Constitution of this State is the supreme law of West Virginia; it is subject only to the Constitution of the United States and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made, under the authority of the United States, all of which constitute the supreme law of the land. *United States Constitution*, Article VI, Clause 2. The Constitution of West Virginia is binding upon all the departments of government of this State, all its officers, all its agencies, all its citi-

---

5. *See* W. Va.Code § 3–1–31 (1963).

zens, and all persons whomsoever within its jurisdiction. The three branches of our government, the legislative, the executive, and the judiciary, alike derive their existence from it; and all of them must exercise their power and authority under the Constitution solely and strictly in accordance with the will of the sovereign, the people of West Virginia, as expressed in that basic law. It is the solemn duty of this Court, its creature, to obey and give full force and effect to all its terms and provisions.

*Harbert v. County Court,* 129 W.Va. 54, 61–62, 39 S.E.2d 177, 184 (1946). The legitimacy of state actions is strictly conditioned upon the government's adherence to the provisions of the Constitution of West Virginia. Such provisions prescribe not only the responsibilities of each branch of government but also the limitations upon each branch.

In determining the meaning of the constitutional language before us, this Court is mindful that "[w]here a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed." Syllabus Point 3, *State ex rel. Smith v. Gore,* 150 W.Va. 71, 143 S.E.2d 791 (1965). Significantly, "[c]ourts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution." Syllabus Point 3, *State ex rel. Casey v. Pauley,* 158 W.Va. 298, 210 S.E.2d 649 (1975). Further, in discerning the meaning of constitutional language, this Court is cognizant that "[w]ords used in a state constitution, as distinguished from any other written law, should be taken in their general and ordinary sense." Syllabus Point 6, *State ex rel. Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953). We will now apply these principles to the constitutional language at issue.

The language in *W. Va. Const.,* art. VII, § 16 which is relevant to this case provides that "[w]henever a vacancy shall occur in the office of governor before the first three years of the term shall have expired, a *new* election for governor *shall* take place to fill the vacancy." (Emphasis added.) This language is plain and unambiguous, and indicates that when a vacancy occurs in the office of governor during the first three years of the term, a new election shall be held to fill the vacancy. The mandatory nature, prescribed in our Constitution for a new election is demonstrated by the framers' use of the word "shall." "As used in constitutional provisions, the word 'shall' is generally used in the imperative or mandatory sense." Syllabus Point 3, *State ex rel. Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953). When a vacancy occurs in the final year of the term, a new election is not mandated by this provision. In that instance, the vacancy shall be filled at the next general election.

This Court also has indicated that "[i]n construing a constitution, what is implied is as much a part of the instrument as what is expressed." *State ex rel. Moore v. Blankenship,* 158 W.Va. 939, 956–957, 217 S.E.2d 232, 242–243 (1975) (citation omitted). We believe that the framers of the Constitution, by specifically requiring an election when a vacancy occurs in the first three years of a gubernatorial term but not requiring an election if the vacancy occurs in the final year of the term, clearly intended that a person not elected to the post may act as governor for a period of no more than one year. This is the obvious result of not mandating a new election if the vacancy occurs in the final year of the term. Further, there would be no reason for the framers to require a new election in the event that there is more than one year remaining in the term if this were not the framers' intent. Clearly, the framers contemplated that the new election must occur at such a time as will permit the person elected as governor in the new election to assume office within one year of the date that the vacancy in the office occurred.

This reading of *W. Va. Const.,* art. VII, § 16 is in accord with the plain language of the constitutional provision and with the clear implications arising from that language. Moreover, it is consistent with the Constitution's separation of powers doctrine. According to *W. Va. Const.,* art. V, § 1,

The legislative, executive and judicial departments shall be separate and distinct,

so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

With regard to this provision, this Court has stated:

The separation of these powers; the independence of one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of Government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained. No theory of government has been more loudly acclaimed.

*State v. Huber,* 129 W.Va. 198, 209, 40 S.E.2d 11, 18 (1946). The fact that the framers included a clear and strong provision in the Constitution mandating the separation of powers, but provided an exception in art. VII, § 16 wherein a legislative officer shall contemporaneously act as governor when necessary, suggests to this Court that the framers intended for this exception to be temporary in nature, not to exceed one year. In other words, the framers intended only a temporary disruption in the balance of power between the legislative and executive branches.

 Further, this Court's reading of art. VII, § 16 is consistent with the fact that our government is founded upon the right of the people to elect their highest public officials. This right is enshrined in our Constitution which provides that "[t]he powers of government reside in all the citizens of the State, and can be rightfully exercised only in accordance with their will and appointment." *W.Va. Const.,* art. II, § 2 (*See also W. Va. Const.,* art. VII, § 1 providing for the popular election of the governor). This right of the people is also recognized in our jurisprudence:

The American constitutional system, under which West Virginia's government is organized, W. Va. Const. art. 1, § 1, changed substantially the operative theory of sovereignty and identified the sovereign, whose will legitimizes authority, as the

people. Virginia Declaration of Rights, c. 1, § 2 (May 6, 1776); the Declaration of Independence (July 4, 1776); U.S. Const. Preamble; W. Va. Const. art. 2, § 2.

Syllabus Point 1, *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624 (1981). For this reason, the framers contemplated that in the event that a vacancy occurs in the office of governor, a person shall act as governor for only such time as is reasonably necessary to elect a new governor. Any other reading of art. VII, § 16 would be in conflict with the right of the people to elect the highest public officials who serve them.

Accordingly, for all of the reasons discussed above, this Court holds that pursuant to *W. Va. Const.,* art. VII, § 16, the period of time in which the duties of the governor shall be performed by a person who was not elected to the office of governor by the people in a statewide election shall not exceed one year. Consequently, we further hold that pursuant to *W. Va. Const.,* art. VII, § 16, whenever a vacancy shall occur in the office of governor before the first three years of the term shall have expired, a new statewide election shall be held as soon as practicable and in compliance with the constitutional prescription that the office be assumed by an elected successor within one year of the date when the vacancy first occurred. In the instant case, the vacancy in the office of governor occurred in the first three years of the term. Therefore, the Constitution mandates that a new election for the office of governor be held within the time period contemplated by *W. Va. Const.,* art. VII, § 16.

 Having determined the clear meaning of *W. Va. Const.,* art. VII, § 16, and the constitutional requirement that a new election for governor be held, we now turn our attention to W. Va.Code § 3–10–2. At the outset, we note that the first paragraph of this statute reproduces verbatim the language of *W. Va. Const.,* art. VII, § 16. This indicates to us the Legislature's intent to execute the provisions of art. VII, § 16, properly. It also demonstrates the Legislature's understanding that it is required to create a mechanism to fulfill the constitutional mandate set forth in art. VII, § 16. Because this

statutory language comes directly from art. VII, § 16, this language is unquestionably constitutional. Moreover, this language obviously has the same meaning that it has in art. VII, § 16. Most importantly, the statutory language, borrowed from our Constitution, likewise mandates a new election if the vacancy in the office of governor occurs in the first three years of the governor's term.

 Immediately after this language from the Constitution, W. Va. Code § 3-10-2 provides that "[i]f the vacancy shall occur more than thirty days next preceding a general election, the vacancy shall be filled at such election." According to the petitioners, this language is unconstitutional when applied to the instant facts because it delays the election to fill the vacancy in the office of governor nearly two years until the next general election. The petitioners assert that such a result is inconsistent with the constitutional mandate prohibiting a legislative officer from performing the acts of the governor for a period exceeding one year. We agree. In this case, the vacancy in the office of governor occurred on November 15, 2010, which is more than thirty days preceding the next general election which is scheduled for November 2012. However, delaying the election to fill the vacancy in the office of governor until November 2012 would result in a legislative officer acting as governor for a period in excess of one year. Such a result directly conflicts with and violates art. VII, § 16. Therefore, this statutory language is unconstitutional as applied to the facts of this case and is therefore rendered inoperative in the matter before us.[6]

To this point, this Court has determined the meaning of the language at issue in W.

Va. Const., art. VII, § 16, and the corresponding language in W. Va.Code § 3-10-2. We also have found that the Legislature intended to execute the provisions of W. Va. Const., art. VII, § 16 when it enacted W. Va.Code § 3-10-2. This Court has found some of the language in W. Va.Code § 3-10-2 to be unconstitutional as applied to the present case. The fact remains, however, that the statute, by incorporating the language from W. Va. Const., art. VII, § 16, clearly provides that whenever a vacancy shall occur in the office of governor before the first three years of the term shall have expired, a new election shall be held as soon as practicable to prevent a legislative officer from serving as acting governor for a period exceeding one year. The statute further contemplates that in the event that a vacancy occurs in the first three years of the term, the acting governor shall issue a proclamation, fixing a time for a special election to fill such vacancy.

 In the instant case, the vacancy in the office of governor occurred during the first three years of the term. Therefore, W. Va. Const., art. VII, § 16 operates to prohibit Respondent Tomblin, as Senate President from acting as governor for a period of time exceeding one year from the date of the vacancy in the office of governor. W. Va. Code § 3-10-2 also requires Respondent Tomblin, as "acting governor,"[7] to issue a proclamation, fixing a time for a special election, to fill the vacancy in the office of governor in the time period contemplated by both W. Va. Const., art. VII, § 16, and W. Va. Code § 3-10-2. Therefore, this Court finds that there is a clear legal right in the peti-

6. The statutory language at issue is not, however, facially invalid. One challenging a statutory provision on its face "must establish that no set of circumstances exists under which the legislation would be valid." *Robinson v. Charleston Area Med. Center,* 186 W.Va. 720, 726, 414 S.E.2d 877, 883 (1991) (citation omitted). In the instant case, if a vacancy were to occur in the governor's office in the final year of the term, it would be proper under the constitution to fill the vacancy at the next general election. Therefore, there is a set of circumstances under which the statutory language would be valid.

7. Our State Constitution does not provide for the office of acting governor. Rather, it simply provides that the senate president shall temporarily act as governor during a vacancy in that office until such time as a new governor is elected. However, W. Va.Code § 3-10-2 utilizes the term "acting governor." The senate president does not cease being a constitutional officer when he or she acts as governor. The senate president remains the senate president. Should the senate president become unable or incapable of performing as senate president, art. VII § 16, clearly articulates that the constitutional duty and power to act as governor devolve to the Speaker of the House of Delegates.

tioners to the relief sought and a legal duty on the part of Respondent Tomblin, in his official capacity, to do the thing which the petitioners seek to compel. Finally, this Court finds that the petitioners do not have another adequate remedy. Accordingly, we conclude that all of the requirements for the issuance of a writ of mandamus have been met.

In the second paragraph of W.Va. Code § 3–10–2, the Legislature established the procedure to be followed regarding the holding of a new or special election for governor. (Obviously, the term "special election" used in the second paragraph of the statute is synonymous with the term "new election" used in the first paragraph of the statute.):

> If the vacancy is to be filled at a general election and shall occur before the primary election to nominate candidates to be voted for at such general election, candidates to fill the vacancy shall be nominated at such primary election in accordance with the time requirements and the provisions and procedures prescribed in article five of this chapter. When nominations to fill such vacancy cannot be so accomplished at such primary election, **and in all cases wherein the vacancy is to be filled at a special election, candidates to be voted for at such general or special elections shall be nominated by a state convention** to be called, convened and held under the resolutions, rules and regulations of the political party executive committees of the state.... (Emphasis added).

 This procedure appears to indicate that candidates for governor who are to be voted on in the new or special election shall be nominated by a convention, as opposed to a primary election, to be called under the rules of the political party executive committees of the State. The procedure established in the second paragraph of W. Va.Code § 3–10–2 regarding the holding of a new or special election to fill the vacancy in the office of governor is within the legislative prerogative and does not violate the State Constitution. Having found the procedure constitutional, it would be improper of this Court to second-guess the wisdom of this procedure, or to otherwise "legislate" a procedure more to our liking. We observe that the Legislature has just begun its general session. The Legislature may amend the procedure for providing for a new or special election if it deems it appropriate to do so, provided, however, any new procedure may not conflict with the Constitution which requires that all acts necessary to elect a governor shall be completed within one year of the vacancy in the office.

Accordingly, this Court grants the writ of mandamus prayed for by the petitioners with regard to Respondent Tomblin, in his official capacity, and we direct Respondent Tomblin, in executing his duty to act as governor, forthwith to issue a proclamation to fix a time for a new statewide election to fill the vacancy in the office of governor consistent with the provisions of W. Va.Code § 3–10–2.[8] In issuing his proclamation and setting the date for a new election, Respondent Tomblin, in his official capacity, must be cognizant of the statutory deadlines under which the Secretary of State must act. In her brief, the Secretary of State indicates that existing election statutes require a minimum of 160 days between the proclamation calling for a special election and the date of the election. The appendix to the brief of the Secretary of State further indicates that an optimal schedule may require 195 days between the proclamation calling for a special election and the date of the election. These dates were not disputed by any other party. The setting of the date of such new election must ensure that the vacancy in the office of governor be properly filled within one year of the date when the vacancy occurred.

---

8. As set forth above, Respondent Tomblin argues that when W. Va. Const., art. VII, § 16 and W. Va.Code § 3–10–2 were enacted, general elections were held every year, and that the language in these provisions must be read in that context. We note that by 1932, the Legislature had amended the election code to provide that the general election shall be held in each *even* year. However, even though W. Va.Code § 3–10–2 has been amended numerous times since then, the Legislature has not changed the language of that statute to reflect the fact that general elections now occur every two years. This clearly indicates to the Court that W. Va.Code § 3–10–2 is not to be read in the context of general elections occurring yearly.

With regard to Respondent Thompson and Respondent Tennant, we find that the applicable law does not compel action on their part in this matter. Therefore, we deny the writ with regard to those respondents.

## IV.

### CONCLUSION

For the reasons set forth above, the writ of mandamus prayed for by the petitioners with regard to Respondent Tomblin, in his official capacity, is granted as directed. However, the writ prayed for against Respondent Thompson and Respondent Tennant is denied. The Clerk is directed to issue the mandate of the Court contemporaneously with this opinion.

Writ granted in part; writ denied in part.

Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge MILLER, sitting by temporary assignment.