IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

**FILED**

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-616

STATE OF WEST VIRGINIA,
KATIE SWITZER and JENNIFER COMPTON,
Petitioners

v.

TRAVIS BEAVER, WENDY PETERS,
DAVID L. ROACH, State Superintendent of Schools and
L. PAUL HARDESTY, President of the West Virginia Board of Education,
Respondents.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna I. Tabit, Judge
Civil Action Nos. 22-P-24 and 22-P-26
Intermediate Court of Appeals of West Virginia Nos. 22-ICA-1 and 22-ICA-3

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: October 4, 2022
Filed: November 17, 2022

Michael A. Kawash, Esq.
Jonathon C. Stanley, Esq.
Robinson & McElwee PLLC
Charleston, West Virginia
Joshua A. House, Esq., *Pro Hac Vice*
Joseph Gay, Esq., *Pro Hac Vice*
Jeff Rowes, Esq., *Pro Hac Vice*
Institute for Justice
Arlington, Virginia
Counsel for Petitioners,
Katie Switzer and Jennifer Compton

Kelly C. Morgan, Esq.
Michael W. Taylor, Esq.
Harrison M. Cyrus, Esq.
Bailey & Wyant, PLLC
Charleston, West Virginia
Counsel for Respondents,
David L. Roach and
L. Paul Hardesty

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Michael R. Williams, Esq.
Senior Deputy Solicitor General
Caleb A. Seckman, Esq.
Assistant Solicitor General
Charleston, West Virginia
Counsel for Petitioner,
State of West Virginia

Joshua E. Weishart, Esq.
Morgantown, West Virginia
Counsel for Amici Curiae,
Constitution and
Education Law Scholars

Mark A. Sadd, Esq.
Lewis Glasser PLLC
Charleston, West Virginia
Timothy Sandefur, Esq., *Pro Hac Vice*
Scharf-Norton Center for Constitutional
Litigation at the Goldwater Institute
Phoenix, Arizona
Counsel for Amicus Curiae,
Goldwater Institute

Mark A. Sadd, Esq.
Lewis Glasser PLLC
Charleston, West Virginia
Counsel for Amici Curiae,
Cardinal Institute for
West Virginia Policy, Inc., and
Catholic Education Partners Foundation

John H. Tinney, Jr., Esq.
Hendrickson & Long, PLLC
Charleston, West Virginia
Jessica Levin, Esq., *Pro Hac Vice*
Wendy Lecker, Esq., *Pro Hac Vice*
Education Law Center
Newark, New Jersey
Tamerlin J. Godley, Esq., *Pro Hac Vice*
Timothy D. Reynolds, Esq., *Pro Hac Vice*
Philip M. Hwang, Esq., *Pro Hac Vice*
Kiaura Clark, Esq., *Pro Hac Vice*
Paul Hastings LLP
Los Angeles, California
Zoe Lo, Esq., *Pro Hac Vice*
Benjamin S. Gilberg, Esq., *Pro Hac Vice*
Paul Hastings LLP
New York, New York
Counsel for Respondents,
Travis Beaver and Wendy Peters

Matthew R. Bowles, Esq.
Sandra Henson Kinney, Esq.
Lewis Glasser PLLC
Charleston, West Virginia
Counsel for Amicus Curiae,
Mark E. Brennan, Bishop of the Diocese
of Wheeling-Charleston

Blaire Malkin, Esq.
Bren Pomponio, Esq.
Mountain State Justice, Inc.
Charleston, West Virginia
Lydia C. Milnes, Esq.
Mountain State Justice, Inc.
Morgantown, West Virginia
Counsel for Amici Curiae,
The Arc Of West Virginia,
Astrive Advocacy, Inc.,
Mountain State Justice, Inc.,
West Virginia Center for
Budget and Policy, and
West Virginia Statewide Independent
Living Council

Zachary A. Viglianco, Esq.
Gordon L. Mowen, II, Esq.
Ryan A. Nash, Esq.
Orndorff Mowen PLLC
Scott Depot, West Virginia
Alison M. Kilmartin, Esq.
Alliance Defending Freedom
Landsowne, Virginia
Counsel for Amicus Curiae,
West Virginia Christian
Education Association

Leslie Davis Hiner, Esq., *Pro Hac Vice*
EdChoice
Indianapolis, Indiana
David Powers, Esq., *Pro Hac Vice*
Powers Compliance, PLLC
Washington, D.C.
Danielle Waltz, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for Amici Curiae,
Edchoice, and
Foundation for Excellence in Education

Elbert Lin, Esq.
Hunton Andrews Kurth LLP
Richmond, Virginia
Erica N. Peterson, Esq.
Hunton Andrews Kurth LLP
Washington, D.C.
Counsel for Amici Curiae,
yes. every kid. Foundation, and
Americans for Prosperity Foundation

Michael J. Folio, Esq.
Disability Rights of West Virginia
Charleston, West Virginia
Selene Almazan-Altobelli, Esq.,
*Pro Hac Vice*
Council of Parent Attorneys and
Advocates, Inc.,
Towson, Maryland
Counsel for Amici Curiae,
Council of Parent Attorneys
and Advocates,
Disability Rights of West Virginia, and
National Disability Rights Network

Lonnie C. Simmons, Esq.
DiPiero Simmons McGinley &
Bastress, PLLC
Charleston, West Virginia
Counsel for Amici Curiae,
Pastors for Children,
National Education Association,
West Virginia Education Association,
American Federation of Teachers,
AFT-West Virginia,
Network for Public Education,
Southern Education Foundation,
National Center for Youth Law, and
Intercultural Development Research
Association

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON concurs and reserves the right to file a concurring Opinion.

CHIEF JUSTICE HUTCHISON dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

1.    "The Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. Pt. 1, *Foster v. Cooper*, 155 W. Va. 619, 186 S.E.2d 837 (1972).

2.    "This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*." Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009).

3.    "Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Syl. Pt. 1, *Baisden v. W. Va. Secondary Schools Activities Comm'n.,* 211 W. Va. 725, 568 S.E.2d 32 (2002) (internal citation omitted).

4.    "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard.  We review challenges to findings of fact

under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

5.      "In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965).

6.      "There is a presumption of constitutionality with regard to legislation." Syl. Pt. 6, in part, *Gibson v. W. Va. Dep't of Hwys.*, 185 W. Va. 214, 406 S.E.2d 440 (1991).

7.      A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully.  The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.

8.      "Where a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed."

ii

Syl. Pt. 1, *Jarrett Printing Co. v. Riley*, 188 W. Va. 393, 424 S.E.2d 738 (1992) (internal citation omitted).

9.      "Courts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution." Syl. Pt. 2, *Jarrett Printing Co. v. Riley*, 188 W. Va. 393, 424 S.E.2d 738 (1992) (internal citation omitted).

10.      "The Thorough and Efficient Clause contained in Article XII, Section 1 of the West Virginia Constitution requires the Legislature to develop a high quality State-wide education system." Syl. Pt. 5, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979).

11.      "Inasmuch as the Constitution of West Virginia is a restriction of power rather than a grant of power, as is the federal Constitution, the Legislature may enact any measure not interdicted by that organic law or the Constitution of the United States." Sy. Pt. 1, *State ex rel. Metz v. Bailey*, 152 W. Va. 53, 159 S.E.2d 673 (1968).

12.      The Hope Scholarship Act, West Virginia Code § 18-31-1 to -13 (2021), does not facially violate the "free schools" clause contained in article XII, section 1 of the West Virginia Constitution.

13.      "The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State." Syl. Pt. 3, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979).

14.      "If the State takes some action which denies or infringes upon a person's fundamental right to an education, then strict scrutiny will apply and the State

must prove that its action is necessary to serve some compelling State interest. Furthermore, any denial or infringement of the fundamental right to an education for a compelling State interest must be narrowly tailored." Syl. Pt. 2, *Cathe A. v. Doddridge Cnty. Bd. of Educ.*, 200 W. Va. 521, 490 S.E.2d 340 (1997) (internal citation omitted).

15. "Because of public education's constitutionally preferred status in this State, expenditures for public education cannot be reduced . . . in the absence of a compelling factual record to demonstrate the necessity therefor." Syl. Pt. 2, in part, *State ex rel. Bd. of Educ. of Kanawha Cnty. v. Rockefeller*, 167 W. Va. 72, 281 S.E.2d 131 (1981).

16. "In due recognition of fundamental principles relating to the separation of powers among the legislative, executive and judicial branches of government, courts recognize the power of the legislature to make reasonable classifications for legislative purposes. Courts are bound by a presumption that legislative classifications are reasonable, proper and based on a sound exercise of the legislative prerogative. If a statute enacted by the legislature applies throughout the state and to all persons, entities or things within a class, and if such classification is not arbitrary or unreasonable, the statute must be regarded as general rather than special. In making classifications for legislative purposes, a wide range of discretion must be conceded by the courts to the legislature. In any case of doubt, courts must favor a construction of a statute which will result in its being regarded as general rather than special. A statute must be regarded as general rather than special when it operates uniformly on all persons, entities or things of a class. A law which operates uniformly upon all persons, entities or things as a class is a general law; while a

law which operates differently as to particular persons, entities or things within a class is a special law." Syl. Pt. 7, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965).

ARMSTEAD, Justice:

The Circuit Court of Kanawha County granted a permanent injunction enjoining the State from implementing the Hope Scholarship Act, West Virginia Code § 18-31-1 to -13 (2021), after finding that it was unconstitutional. Our Constitution says that "[t]he Legislature shall provide, by general law, for a thorough and efficient system of free schools." W. Va. Const. art. XII, § 1. The circuit court ruled that this means that the Legislature may *only* provide a thorough and efficient system of free schools. The word "only" does not appear in article XII, section 1, and this Court has long held that "[t]he Constitution of West Virginia being a restriction of power rather than a grant thereof, *the legislature has the authority to enact any measure not inhibited thereby*."[1] Article XII, section 1 does not contain language prohibiting the Legislature from enacting the Hope Scholarship Act, in addition to its duty to provide for a thorough and efficient system of free schools.

In declaring the Hope Scholarship Act to be unconstitutional, the circuit court questioned the wisdom of the policy decisions the Legislature made in passing the Act. We have often recognized that

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to

---

[1] Syl. Pt. 1, *Foster v. Cooper*, 155 W. Va. 619, 186 S.E.2d 837 (1972) (Emphasis added).

1

enforce legislation unless it runs afoul of the State or Federal *Constitutions*.[2]

We emphasize that it is not the judiciary's role to question the public policy merits of the Hope Scholarship Act. Our policy preferences are not relevant. Our only role in this matter is to assess the constitutionality of the Hope Scholarship Act. When assessing the constitutionality of a legislative enactment, "courts must exercise due restraint," and "[e]very reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question."[3]

Applying these standards, we find that the West Virginia Constitution does not prohibit the Legislature from enacting the Hope Scholarship Act in addition to providing for a thorough and efficient system of free schools. The Constitution allows the Legislature to do both of these things. Therefore, we find that the circuit court abused its discretion by permanently enjoining the State from implementing the Hope Scholarship Act. We reverse the circuit court's July 22, 2022, order and dissolve the permanent

---

[2] Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009) (footnote added).

[3] Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965).

injunction it entered.  This case is remanded to the circuit court with directions for it to enter judgment in Petitioners' favor.[4]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Hope Scholarship Act

This appeal concerns the Hope Scholarship Act ("Act"), West Virginia Code § 18-31-1 to -13, also known as House Bill 2013, which was enacted by the Legislature in March of 2021.  The Act created the Hope Scholarship Program "to provide the option for a parent to better meet the individual education needs of his or her eligible child." *Id.* § 18-

---

[4] We express our appreciation for the contributions of the amici curiae who submitted briefs in this matter: Mark E. Brennan, Bishop of the Diocese of Wheeling-Charleston, by counsel Matthew R. Bowles and Sandra Henson Kinney, Lewis Glasser, PLLC; Goldwater Institute, by counsel Mark A. Sadd, Lewis Glasser, PLLC; Cardinal Institute for West Virginia Policy, Inc., and Catholic Education Partners Foundation, by counsel Mark A. Sadd, Lewis Glasser, PLLC; EdChoice, Inc., and Foundation for Excellence in Education, by counsel Leslie Davis Hiner, EdChoice, David Powers, Powers Compliance, PLLC, and Danielle Waltz, Jackson Kelly PLLC; yes. every kid. Foundation and Americans for Prosperity Foundation, by counsel Elbert Lin and Erica N. Peterson, Hunton Andrews Kurth LLP; Council of Parent Attorneys and Advocates, Disability Rights of West Virginia and National Disability Rights Network, by counsel Michael J. Folio, Disability Rights of West Virginia, and Selene Almazan-Altobelli; the Arc of West Virginia, Astrive Advocacy, Inc., Mountain State Justice, Inc., West Virginia Center for Budget and Policy, and West Virginia Statewide Independent Living Council, by counsel Blaire Malkin, Bren Pomponio, and Lydia C. Milnes, Mountain State Justice, Inc.; Pastors for Children, the National Education Association, the West Virginia Education Association, the American Federation of Teachers, AFT-West Virginia, the Network for Public Education, the Southern Education Foundation, the National Center for Youth Law, and the Intercultural Development Research Association, by counsel Lonnie C. Simmons, DiPiero Simmons McGinley & Bastress, PLLC; Constitution and Education Law Scholars, by counsel Joshua E. Weishart; and the West Virginia Christian Education Association, by counsel Zachary A. Viglianco, Gordon L. Mowen, II, and Ryan A. Nash, Orndorff Mowen PLLC, and Alison M. Kilmartin, Alliance Defending Freedom.

31-5(a).  To accomplish this goal, the Act created education-savings accounts[5] that "may only be used" for specific educational purposes. *Id.* § 18-31-7(b).  The Act directs that

> [p]arents of a Hope Scholarship student shall agree to use the funds deposited in their student's Hope Scholarship account only for the following qualifying expenses to educate the student:
>
> (1) Ongoing services provided by a public school district pursuant to § 18-31-8(f) of this code, including without limitation, individual classes and extracurricular activities and programs;
>
> (2) Tuition and fees at a participating school;
>
> (3) Tutoring services provided by an individual or a tutoring facility: Provided, That such tutoring services are not provided by a member of the Hope Scholarship student's immediate family;
>
> (4) Fees for nationally standardized assessments, advanced placement examinations, any examinations related to college or university admission, and tuition and/or fees for preparatory courses for the aforementioned exams;
>
> (5) Tuition and fees for programs of study or the curriculum of courses that lead to an industry-recognized credential that satisfies a workforce need;

---

[5] The amount of each individual Hope Scholarship equals "the prior year's statewide average net aid share allotted per pupil" in a public school, "based on net enrollment adjusted for state aid purposes[.]" *Id.* § 18-31-6(b).  If a student does not spend the entire fiscal year in the program, the scholarship is prorated accordingly. *Id.*  Further, "Hope Scholarship funds may not be refunded, rebated, or shared with a parent or student in any manner. Any refund or rebate for goods or services purchased with Hope Scholarship funds shall be credited directly to a student's Hope Scholarship account." *Id.* § 18-31-7(c).  Based on the foregoing, each current Hope Scholarship recipient would receive approximately $4,300 in their education-savings account.

4

(6) Tuition and fees for nonpublic online learning programs;

(7) Tuition and fees for alternative education programs;

(8) Fees for after-school or summer education programs;

(9) Educational services and therapies, including, but not limited to, occupational, behavioral, physical, speech-language, and audiology therapies;

(10) Curriculum as defined in § 18-31-2 of this code;

(11) Fees for transportation paid to a fee-for-service transportation provider for the student to travel to and from an education service provider; and

(12) Any other qualified expenses as approved by the board established pursuant to § 18-31-3 of this code.

*Id.* § 18-31-7(a).

The Hope Scholarship is open to any child who resides in West Virginia and "is enrolled full-time and attending a public elementary or secondary school program in this state for at least 45 calendar days . . . or is eligible at the time of application to enroll in a kindergarten." *Id.* § 18-31-2(5). A parent applying for their child to participate in the program must sign an agreement with the West Virginia Hope Scholarship Board[6]

---

[6] The West Virginia Hope Scholarship Board is made up of nine members and is tasked with administering the Hope Scholarship Program. *Id.* § 18-31-3. The Board's responsibilities include ensuring that funds are only used for qualifying educational expenses. *Id.* § 18-31-4(5). The Board is also responsible for verifying the participation and academic progress of program recipients. *Id.* § 18-31-8(a)(3) and (4). Further, the Board has continuing financial oversight and may remove a parent or eligible recipient from the Hope Scholarship program and close a Hope Scholarship account "for failure to
(continued . . .)

5

stipulating that the parent will: 1) "provide an education for the eligible recipient in at least the subjects of reading, language, mathematics, science, and social studies;" 2) "use the Hope Scholarship funds exclusively for qualifying expenses;" 3) "comply with the rules and requirements" of the program; and 4) "afford the [eligible recipient] opportunities for educational enrichment such as organized athletics, art, music, or literature." *Id.* § 18-31-5(d)(3).

> The Act addresses funding in West Virginia Code § 18-31-6. It provides:

> There is hereby created in the State Treasury a special revenue fund designated and known as the West Virginia Hope Scholarship Program Fund. The fund shall be administered by the Treasurer and shall consist of funds transferred by the Department of Education in accordance with § 18-9A-25 of this code.

*Id.* § 18-31-6(a).

> According to West Virginia Code § 18-9A-25(a) (2021), the Department of Education shall include a special request for the program in its annual budget request:

> Notwithstanding any other provision of this article to the contrary, for fiscal year 2023 and each fiscal year thereafter, *in addition to all other amounts required by this article*, the Department of Education shall include in its budget request, and the Governor shall include in each budget bill submitted to the Legislature, an appropriation to the Department of Education for the greater of an amount not less than two percent of net public school enrollment adjusted for state aid purposes or the total number of eligible Hope Scholarship

comply with the terms of the parental agreement . . ., failure to comply with the applicable laws, failure of the student to remain eligible, or intentional and fraudulent misuse of Hope Scholarship funds." *Id.* § 18-31-10(b).

6

applications received by the Hope Scholarship Board, if available, multiplied by the prior year's statewide average net state aid allotted per pupil. The amount appropriated shall be transferred by the Department of Education to the Hope Scholarship Board to be used solely to meet the Hope Scholarship Program obligations set forth in § 18-31-1 *et seq.* of this code except as otherwise provided in this section.

*Id.*, in relevant part. (Emphasis added).

We emphasize that the foregoing statute directs that the budget request for the Hope Scholarship Program Fund is "in addition to all other amounts required by this article." *Id.* The referred-to article, article 9A of chapter 18, addresses public education financing. Thus, per the plain language of the statute, the Hope Scholarship's funding is "in addition to all other amounts required" to fund public education. *Id.* § 18-9A-25(a).

### B. Procedural History

Respondents, Travis Beaver and Wendy Peters ("Respondents"),[7] filed their complaint in the Circuit Court of Kanawha County on January 19, 2022. They argued that the Act was unconstitutional and sought injunctive and declaratory relief.[8] In response, Petitioners, Katie Switzer and Jennifer Compton ("Petitioners"), moved to intervene and

---

[7] Respondent Travis Beaver is a resident of Putnam County, West Virginia, and has two children in public school. Respondent Wendy Peters is a resident of Raleigh County, West Virginia. She is a teacher in a public school and has a child that attends public school.

[8] Respondents named the State Treasurer, State Superintendent of Schools, President of the Board of Education, President of the Senate, Speaker of the House, and Governor as defendants.

argued that the Act was constitutional. Petitioners asserted that they were both relying on Hope Scholarship funds to educate their children.

The parties filed a number of motions which the circuit court considered during a July 6, 2022, hearing. These included: 1) Respondents' motion for a preliminary injunction;[9] 2) motions to dismiss filed by four defendants (the State Treasurer, President of the Senate, Speaker of the House, and Governor); 3) Petitioners' motion for judgment on the pleadings; and 4) the State of West Virginia's ("State") motion to intervene.

One of the main issues addressed at the hearing was the Hope Scholarship's funding sources and mechanism. Respondents asserted that the Act would decrease enrollment in public schools by incentivizing students "to either not enter public education or to actually leave public education." Because the "majority of the factors" that comprise the State's public education funding formula ("school funding formula")[10] are based on public school enrollment, Respondents alleged that a decrease in enrollment would result in a decrease in public school funding.

---

[9] Though named as defendants, the State Superintendent of Schools and the President of the Board of Education filed a motion in support of Respondents' motion for a preliminary injunction, arguing that the Act was unconstitutional.

[10] In their brief to this Court, the State Superintendent and President of the Board of Education note that public education is financed "primarily by the West Virginia Public School Support Plan, which is codified in West Virginia Code § 18-9A-1, *et seq*. . . [and that] a significant majority of the funding formula is attributable directly or indirectly to enrollment figures from the prior year."

By contrast, the State and Petitioners argued that the Act was funded through the "general fund," and did not take any funding intended for public education. They asserted that the Legislature is required to provide for a "thorough and efficient system of free schools," under article XII, section 1 of the West Virginia Constitution, but once it accomplishes that goal, it is not prohibited from enacting additional educational initiatives, like the Hope Scholarship Program.

The July 6 hearing transcript reveals that the circuit court questioned where the Legislature would get the money to fund the Act and questioned why that money was not being spent on public education. The circuit court stated, "I am troubled that there seems to be no educational standards or accountability to the public provided by the Hope Scholarship Fund. Funds, in my view, are diverted from a historically underfunded public school system in West Virginia and that is problematic." The circuit court asked Petitioners' counsel: "Where are you going to get $100 million a year to do this?"[11] Counsel replied that the funding was coming from the "general fund," and not from the public school fund. The circuit court and Petitioners' counsel had the following exchange:

> Circuit Court: I can multiply 3,300 [potential number of program participants] by $4,300, and see what monies will be diverted from public education, monies that could have potentially gone to public education that are going to be diverted.

---

[11] Respondents asserted that the program could cost up to $120 million dollars a year. The State noted that in the current year, "3000 students have apparently applied for the program at $4,300 a year. That's $12.9 million, Your Honor. That's not $100 million."

9

Counsel: Again, that's any money in the state [that] could go to public education. The money spent on the road could go to public education. It is not unconstitutional to take money from the general fund and spend it on other legislature priorities.

Circuit Court: But it's money that would've been spent for education.

Counsel: No, it's not. It's general fund money. It could've gone anywhere. It could have gone to the libraries. Could have gone to roads. It could have gone to healthcare. It could have gone to any other issues that West Virginia wants to spend money on.

Circuit Court: And they [the Legislature] want to spend money on this scholarship fund?

Counsel: That appears to be.

While Respondents' motion only sought a preliminary injunction, the circuit court concluded the hearing by announcing that it was "preliminarily and permanently enjoining" the State from implementing the Act based on its finding that the Act was unconstitutional.[12] In its subsequent July 22, 2022, order, the circuit court set forth five main reasons for its finding that the Act was unconstitutional. First, it determined that "the Constitution require[s] the State to raise revenue for, fund, and maintain *only* a thorough and efficient system of free schools supervised by" the West Virginia Board of Education.

---

[12] The circuit court also granted the State's motion to intervene and dismissed all defendants except the Superintendent of Schools and the President of the Board of Education. After the court announced its ruling, the State moved for a thirty-day stay. The court denied the State's motion.

10

(Emphasis added). The circuit court found that the Act exceeds the Constitution by "authorizing a separate system of education, governed by a separate board, funded by West Virginia taxpayer money."

Second, the circuit court ruled that the Act "impinges on West Virginia children's fundamental right to an education without meeting strict scrutiny." It found that the Act impinged on a child's fundamental right to an education by "reducing the funds available to public schools through the state-incentivized reduction in public school enrollment. [The Act] also trades a student's fundamental right to a public education for a sum of money."

Third, the circuit court ruled the Act was unconstitutional because it directed public funds to be spent on non-public education. According to the circuit court, the Constitution "makes clear that public funds for K-12 education are for the free schools and no other purpose whatsoever." Fourth, the circuit court found that the Act "improperly usurps the constitutional authority" of the West Virginia Board of Education. Finally, the circuit court determined that the Act is an unconstitutional special law.

Petitioners and the State filed motions to stay the circuit court's order with the Intermediate Court of Appeals of West Virginia ("Intermediate Court"). After the Intermediate Court denied the motions to stay, Petitioners and the State sought a stay from this Court. While this Court denied the motions to stay, we entered an order on August 18, 2022, 1) obtaining jurisdiction from the Intermediate Court under West Virginia Code §

51-11-4(b)(1) and Rule 1 of the Rules of Appellate Procedure, and 2) expediting briefing and consideration.

## II. STANDARD OF REVIEW

This Court has held that

> [u]nless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

Syl. Pt. 1, *Baisden v. W. Va. Secondary Schools Activities Comm'n.,* 211 W. Va. 725, 568 S.E.2d 32 (2002) (cleaned up).

Further, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996). With these standards as guidance, we consider the parties' arguments.

## III. ANALYSIS

In this appeal, we address five main constitutional arguments raised by the parties: 1) whether the "free schools" clause contained in article XII, section 1 of the West Virginia Constitution *only* permits the Legislature to fund free schools; 2) whether the Act impinges on a child's fundamental right to an education without meeting strict scrutiny; 3) whether the Act improperly directs public funds to be spent on non-public education; 4)

12

whether the Act usurps the West Virginia Board of Education's authority; and 5) whether

the Act is a "special law."[13]  We address each of these in turn.[14]

---

[13] The State and Petitioners, Ms. Switzer and Ms. Compton, argue that the Act is constitutional and that this Court should dissolve the permanent injunction.  Respondents, Mr. Beaver, Ms. Peters, the Superintendent of Schools, and the President of the Board of Education, urge this Court to affirm the circuit court's finding that the Act is unconstitutional. Additionally, multiple amicus briefs, both for and against the circuit court's ruling, have been filed.  For ease of the reader, we attribute all arguments urging reversal of the circuit court's ruling to "Petitioners."  Arguments in favor of affirming the circuit court's ruling are attributed to "Respondents."

[14] The State also argues that the circuit court should have dismissed the case for lack of jurisdiction on standing and ripeness grounds. Petitioners, Ms. Switzer and Ms. Compton, do not contest jurisdiction.  Under the specific facts of this case, we do not find that the circuit court lacked jurisdiction. A number of courts in other jurisdictions addressing alleged violations of educational rights under a state constitution have found that plaintiffs had standing to challenge such laws.  In *Meredith v. Pence*, 984 N.E.2d 1213 (Ind. 2013), the Indiana Supreme Court determined that taxpayers challenging the constitutionality of the State's statutory school voucher program had standing.  The court explained: "As taxpayers challenging allegedly unconstitutional use of public funds, the plaintiffs have standing under Indiana's public standing doctrine, an exception to the general requirement that a plaintiff must have an interest in the outcome of the litigation different from that of the general public." 984 N.E.2d at 1217 n.4 (internal citation omitted).  Similarly, the Nevada Supreme Court ruled that plaintiffs had standing to assert a challenge to an educational spending account program under their state constitution where 1) the issue was of "significant public importance," and 2) plaintiffs contended that a legislative expenditure violated a specific provision of the state constitution. *Schwartz v. Lopez*, 382 P.3d 886, 894-95 (Nev. 2016). *See also Hoke Cty. Bd. of Educ. v. State*, 599 S.E.2d 365, 376-77 (N.C. 2004) ("In declaratory actions involving issues of significant public interest, such as those addressing alleged violations of education rights under a state constitution, courts have often broadened both standing and evidentiary parameters to the extent that plaintiffs are permitted to proceed so long as the interest sought to be protected by the complainant is arguably within the 'zone of interest' to be protected by the constitutional guaranty in question.").  While this Court has not addressed the public standing doctrine at length, we have observed that "[i]n West Virginia the . . . doctrine of standing is not usually employed to avoid a frontal confrontation with an issue of legitimate

(continued . . .)

13

## A. The "Free Schools" Clause

Respondents' argument that the Act is unconstitutional rests largely on its contention that the "free schools" clause, contained in article XII, section 1 of the West Virginia Constitution, *only* permits the Legislature to maintain a thorough and efficient system of free schools. Our review of this issue will include 1) an examination of this Court's role when considering a constitutional challenge to a legislative enactment; 2) the parties' arguments; and 3) our conclusion that the Act does not facially violate the West Virginia Constitution.

This Court has held that

> [i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965).

public concern." *State ex rel. Alsop v. McCartney,* 159 W. Va. 829, 838, 228 S.E.2d 278, 283 (1976). Based on all of the foregoing, we conclude that, under the specific facts of this case, the circuit court did not lack jurisdiction.

Rather than limiting their arguments to the constitutionality of the Act, Respondents have questioned the wisdom of the policy decisions the Legislature made in passing the Act, particularly focusing on the Act's fiscal soundness. We find that the focus on the policy decisions the Legislature made in passing the Act is irrelevant to our consideration of whether the Act is constitutional. We have held that

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.

Syl. Pt. 2, *Huffman*, 223 W. Va. 724, 679 S.E.2d 323. Moreover, this Court has recognized that "the power of the purse lies solely with the Legislature." *Fountain Place Cinema 8, LLC v. Morris*, 227 W. Va. 249, 254, 707 S.E.2d 859, 864 (2011). Thus, the issue in this matter is the constitutionality of the Act; it is not to second-guess the policy decisions the Legislature made in passing the Act.

Respondents have asserted a facial constitutional challenge to the Act. It is well-settled that "[t]here is a presumption of constitutionality with regard to legislation." Syl. Pt. 6, in part, *Gibson v. W. Va. Dep't of Hwys.*, 185 W. Va. 214, 406 S.E.2d 440 (1991). Thus, as we have previously observed, and as we now hold, a facial challenge to the constitutionality of a legislative enactment is "the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally

15

under some conceivable set of circumstances is insufficient to render it wholly invalid."

*Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 691, 408 S.E.2d 634, 641 (1991).

Our specific task in this matter is to examine the "free schools" clause. "[I]n every case involving the application or interpretation of a constitutional provision, analysis must begin with the language of the constitutional provision itself." *State ex rel. Mountaineer Park, Inc. v. Polan*, 190 W. Va. 276, 283, 438 S.E.2d 308, 315 (1993). When reviewing a constitutional provision, we adhere to the following:

> Where a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed.

> Courts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution.

Syl. Pts. 1 and 2, *Jarrett Printing Co. v. Riley*, 188 W. Va. 393, 424 S.E.2d 738 (1992) (internal citations omitted).

The "free schools" clause provides: "The Legislature shall provide, by general law, for a thorough and efficient system of free schools." W. Va. Const. art. XII, § 1. Petitioners assert that the plain language of this clause does not restrict the Legislature from enacting educational initiatives, like the Hope Scholarship Program, in addition to its duty to provide for a thorough and efficient system of free schools. Respondents argue that this clause requires the State to fund, and maintain *only* a thorough and efficient system of free schools. While the word "only" does not appear in the "free schools" clause, the circuit court arrived at its conclusion by applying a statutory interpretation maxim, *expressio unius*

16

*est exclusio alterius* ("*expressio unius*"), which means "the expression of one thing, being the exclusion of the other." *See* Syl. Pt. 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984). Further, Respondents assert that construing the "free schools" clause in *pari materia*[15] with sections 2, 4, and 5 of article XII, supports their conclusion that the Legislature may *only* fund and maintain a thorough and efficient system of free schools.

We agree with Petitioners and find that their argument in favor of the Act's constitutionality is consistent with the plain language of the "free schools" clause and with our vast body of caselaw recognizing that "[t]he general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. Pt. 1, in part, *Gainer*, 149 W. Va. 740, 143 S.E.2d 351.

Our first step when reviewing a constitutional provision is to determine whether the language is clear and plain and may be applied as written. In making this determination, we have held that "[i]f the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). "However, if the language of the constitutional provision is ambiguous, then the ordinary principles employed in statutory construction must be applied to ascertain

---

[15] *See* Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975).

17

such intent." *Randolph Cnty. Bd. of Educ. v. Adams*, 196 W. Va. 9, 16 n. 8, 15, 467 S.E.2d 150, 157 n.8 (1995).

We find that the language of the "free schools" clause is clear and its meaning is plain—the Legislature must provide a thorough and efficient system of free schools. As this Court held in syllabus point five of *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979): "The Thorough and Efficient Clause contained in Article XII, Section 1 of the West Virginia Constitution *requires* the Legislature to develop a high quality State-wide education system."[16] (Emphasis added). While the "free schools" clause requires the Legislature to provide a through and efficient system of free schools, it does not contain any restrictive language prohibiting the Legislature from enacting additional educational initiatives. The lack of any restrictive language is crucial because, as we discuss below, the Legislature has the authority to enact any law unless expressly forbidden to do so by our Constitution.

We have held that "[t]he Constitution of West Virginia being a restriction of power rather than a grant thereof, the legislature has the authority to enact any measure not inhibited thereby." Syl. Pt. 1, *Foster v. Cooper*, 155 W. Va. 619, 186 S.E.2d 837. As this Court explained in syllabus point one of *State ex rel. Metz v. Bailey*, 152 W. Va. 53, 159

---

[16] The Court also defined a "thorough and efficient system of schools" in *Pauley*, stating: "We may now define a thorough and efficient system of schools: It develops, as best the state of education expertise allows, the minds, bodies and social morality of its charges to prepare them for useful and happy occupations, recreation and citizenship, and does so economically." 162 W. Va. at 705, 255 S.E.2d at 877.

S.E.2d 673 (1968): "Inasmuch as the Constitution of West Virginia is a restriction of power rather than a grant of power, as is the federal Constitution, *the Legislature may enact any measure not interdicted by that organic law* or the Constitution of the United States." (Emphasis added). Further, this Court has observed that "the general powers of the Legislature are almost plenary and . . . it can legislate on every subject not interdicted by the Constitution itself." *Robertson v. Hatcher*, 148 W. Va. 239, 251, 135 S.E.2d 675, 683 (1964) (internal citation omitted).

This Court has previously addressed the lack of restrictive language in the "free schools" clause. In *Herold v. McQueen*, 71 W. Va. 43, 75 S.E. 313 (1912), the Court considered a challenge by county taxpayers who argued that the Legislature violated the "free schools" clause by establishing a new high school in Nicholas County and taxing the county residents for the creation of that school. *Id.* at 43, 75 S.E. at 314. The Court rejected this challenge and, after examining the "free schools" clause, explained:

> The Legislature has, by general law, provided a system of free schools throughout the state. But it will be noted that *it is not prohibited from augmenting*, and making more efficient, the general system of free schools, by the establishment of special high schools and graded schools in any locality where it may think it wise to do so.

*Id.* at 43, 75 S.E. at 315-16 (emphasis added).

This Court also examined the "free schools" clause in *Leonhart v. Board of Education of Charleston Independent School District*, 114 W. Va. 9, 170 S.E. 418 (1933). In *Leonhart*, the Court upheld the constitutionality of the Legislature's abolition of independent school districts and its creation of county school boards. The Court noted the

19

broad powers the Legislature enjoys and found that the "free schools" clause does not restrict the Legislature's ability to make changes to our education system:

> The general powers of the Legislature are almost plenary, as it can legislate on every subject not foreclosed by the Constitution itself. The test of legislative power is constitutional restriction. What the people have not said in the organic law their representatives shall not do, they may do.
>
> In view of the broad powers enjoyed by the Legislature *in the absence of constitutional restrictions*, as well as the specific provision of section 1 of the article on education, *that body has the right to make change[s] in the educational system as it may see fit*, subject, of course, to constitutional limitations.

*Id.* at 9, 170 S.E. at 420 (internal citation omitted) (emphasis added).

Based on the foregoing, we find that the "free schools" clause operates as a floor, not a ceiling. That is, it contains a requirement of what the Legislature must do; it does not prohibit the Legislature from enacting additional educational initiatives, such as the Hope Scholarship Program.[17]

---

[17] This conclusion—that our "free schools" clause operates as a floor, not a ceiling— is consistent with courts from outside of our jurisdiction that have examined educational provisions in their state constitutions. *See Hart v. State*, 774 S.E.2d 281, 289-90 (N.C. 2015) ("[T]he uniformity clause requires that provision be made for public schools of like kind throughout the state. . . . The uniformity clause applies exclusively to the public school system and does not prohibit the General Assembly from funding educational initiatives outside of that system."); *Jackson v. Benson*, 578 N.W.2d 602, 628 (Wis. 1998) (concluding that a constitutional provision requiring the legislature to provide a uniform, free school system was "not a ceiling but a floor upon which the legislature can build additional opportunities for school children in Wisconsin[.]" (internal citation omitted)); *Schwartz v. Lopez*, 382 P.3d at 898 ("[A]s long as the Legislature maintains a uniform public school system, open and available to all students, the constitutional mandate . . . is satisfied, and the Legislature may encourage other suitable educational measures[.]").

Based on this conclusion, we find Respondents' reliance on *expressio unius* to be misplaced. *Expressio unius* is generally used as a statutory construction tool when interpreting an ambiguous statute. In *Young v. Apogee Coal Co., LLC*, 232 W. Va. 554, 562, 753 S.E.2d 52, 60 (2013), this Court noted that "[t]he *expressio unius* maxim is premised upon an assumption that certain omissions from a statute by the Legislature are intentional." As both this Court and the United State Supreme Court have recognized, *expressio unius* only applies in limited circumstances.[18] The Supreme Court set forth these limited circumstances in *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 122 S.Ct. 2045 (2002):

> The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded. . . . [*E*]*xpressio unius* properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference.

536 U.S. at 81, 122 S.Ct. at 2050 (internal citation omitted).

Additionally, a number of courts from outside of our jurisdiction have determined that *expressio unius* should be applied sparingly when construing a state

---

[18] In a concurring opinion in *State v. Euman*, 210 W. Va. 519, 558 S.E.2d 319 (2001), it was noted that "*expressio unius* is not a rule of law, but merely an aid to construing an otherwise ambiguous statute. . . . And even in this limited capacity courts have frequently admonished that the maxim is to be applied with great caution and is recognized as unreliable." *Id.* at 524, 558 S.E.2d at 324 (McGraw, .J., concurring) (internal citation omitted).

constitutional provision. *See State ex rel. Jackman v. Court of Common Pleas of Cuyahoga Cnty.*, 224 N.E.2d 906, 910 (Ohio 1967) ("[T]he maxim, *expressio unius est exclusio alterius*, should be applied with caution to provisions of constitutions relating to the legislative branch of the government, since it cannot be made to restrict the plenary power of the legislature." (internal citation omitted)); *Gangemi v. Berry*, 134 A.2d 1, 11 (N.J. 1957) ("[Expressio Unius] is not to be applied with the same rigor in construing a state constitution as a statute; only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the legislature." (internal citation omitted)); *Dean v. Kuchel*, 230 P.2d 811, 813 (Cal. 1951) ("[T]he express enumeration of legislative powers is not an exclusion of others not named unless accompanied by negative terms.").

The "free schools" clause does not contain any negative or restrictive language, nor does it contain "a series of two or more terms or things that should be understood to go hand in hand." *Chevron*, 536 U.S. at 81, 122 S.Ct. at 2050. Thus, consistent with the foregoing authorities, we reject Respondents' argument and find that the circuit court abused its discretion by applying *expressio unius* to conclude that the "free schools" clause "only" permits the Legislature to provide a thorough and efficient system of free schools.[19]

---

[19] Respondents' argument that the word "only" should be inserted into article XII, section 1, would drastically alter its plain meaning and is contrary to our direction to apply

(continued . . .)

We also reject Respondents' argument that the Act is unconstitutional when construing the "free schools" clause in *pari materia* with sections 2, 4, and 5 of article XII. The circuit court's order cites the following language from these sections that Respondents relied on:

> Article XII, Section 2 states that "general supervision of the free schools of the State shall be vested in the West Virginia board of education[.]" Article XII, Section 4 states that public monies existing in the "school fund . . . shall be annually applied to the support of free schools throughout the state, and to no other purpose whatever." . . . Article XII, Section 5 states that the "Legislature shall provide for the support of free schools . . . by general taxation" and other public monies [and] . . . that "[t]he power of taxation of the Legislature shall extend to . . . the support of free schools[.]"

We find no support for Respondents' position that construing these sections with the "free schools" clause requires the State to fund, and maintain *only* a thorough and efficient system of free schools. "[T]he legislature has the authority to enact any measure not inhibited [by the West Virginia Constitution]." Syl. Pt. 1, in part, *Foster*, 155 W. Va. 619, 186 S.E.2d 837. Sections 2, 4, and 5 of article XII do not contain any language

---

the Constitution as written: "Although this Court is vested with the authority to construe, interpret and apply provisions of the Constitution, . . . [we] may not add to, distort or ignore the plain mandates thereof. Thus, if a constitutional provision is clear in its terms, . . . this Court must apply and not interpret the provision." *State ex rel. Morrisey v. W. Va. Office of Disc. Counsel*, 234 W. Va. 238, 255, 764 S.E.2d 769, 786 (2014) (internal citation omitted).

prohibiting the Legislature from enacting educational initiatives in addition to its duty to provide for a thorough and efficient system of free schools.[20]

Based on the foregoing, we reject Respondents' argument and conclude that the circuit court abused its discretion by ruling that the Act is unconstitutional when construing the "free schools" clause in *pari materia* with sections 2, 4, and 5 of article XII.

Having considered and rejected the grounds upon which the circuit court found that the Act violates the "free schools" clause, we now hold that the Act, West Virginia Code § 18-31-1 to -13, does not facially violate the "free schools" clause contained in article XII, section 1 of the West Virginia Constitution.

## B.  Fundamental Right to an Education/Strict Scrutiny

---

[20] In addition, Article XII, section 12 provides: "The Legislature shall foster and encourage, moral, intellectual, scientific and agricultural improvement; it shall, whenever it may be practicable, make suitable provision for the blind, mute and insane, and for the organization of such institutions of learning as the best interests of general education in the state may demand."  Other jurisdictions have interpreted similar constitutional provisions to support holdings that their legislatures had the ability to fund non-public educational initiatives.  *See Meredith v. Pence*, 984 N.E.2d at 1222 ("[T]he General Assembly's duty 'to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement' is to be carried out *in addition* to provision for the common school system." (emphasis in original)); *Schwartz v. Lopez*, 382 P.3d at 898  ("[T]he Nevada Constitution contains two distinct duties set forth in two separate sections of Article 11—one to encourage education through all suitable means (Section 1) and the other to provide for a uniform system of common schools (Section 2). We conclude that as long as the Legislature maintains a uniform public school system, open and available to all students, the constitutional mandate of Section 2 is satisfied, and the Legislature may encourage other suitable educational measures under Section 1.").

24

Next, Respondents contend that the Act "impinges on West Virginia children's fundamental right to an education without meeting strict scrutiny." They argue that the Act impinges on a child's fundamental right to an education by 1) trading a student's fundamental right to a public education for a sum of money, and 2) reducing the funds available to public schools by reducing public school enrollment. The circuit court agreed with Respondents' argument and found that "[t]he State must demonstrate that such actions meet a compelling state interest and are narrowly tailored to achieve that compelling interest. . . . [The Act] does not meet either prong of the strict scrutiny analysis." Petitioners contend that strict scrutiny does not apply because the Act does not impinge on a child's fundamental right to an education in either manner suggested by Respondents.

We agree with Petitioners and find that our strict scrutiny test does not apply because the Act does not impinge on a child's fundamental right to an education. After a brief background discussion, we will address the circuit court's ruling.

This Court has found that education is a fundamental right: "The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State." Syl. Pt. 3, *Pauley*, 162 W. Va. 672, 255 S.E.2d 859. In addition, this Court has held that

> [i]f the State takes some action which denies or infringes upon a person's fundamental right to an education, then strict scrutiny will apply and the State must prove that its action is necessary to serve some compelling State interest. Furthermore, any denial or infringement of the fundamental

right to an education for a compelling State interest must be narrowly tailored.

Syl. Pt. 2, *Cathe A. v. Doddridge County Bd. of Educ.*, 200 W. Va. 521, 490 S.E.2d 340 (1997) (internal citation omitted).  With this background in mind, we address the two areas in which the circuit court found that the Act impinges on a child's fundamental right to an education.

## 1. Right to Education Traded For a "Sum of Money"

The circuit court, relying on West Virginia Code § 18-31-8(f), noted that "[i]f a student who receives [the Hope Scholarship] wants to take classes at a public school or use any other public school resources, the student has to pay for these services."[21]  Based

---

[21] West Virginia Code § 18-31-8(f) provides:

> The [Hope Scholarship] board, in consultation with the Department of Education, may adopt rules and policies for Hope Scholarship students who want to continue to receive services provided by a public school or district, including individual classes and extracurricular programs, in combination with an individualized instructional program. The board, in consultation with the Department of Education, shall ensure that any public school or school district providing such services receives the appropriate pro rata share of a student's Hope Scholarship funds based on the percentage of total instruction provided to the student by the public school or school district. County boards shall charge tuition to Hope Scholarship students who enroll for services in a public school within the county. Hope Scholarship students who enroll for services part-time in public school shall not be included in net enrollment for state aid funding purposes under § 18-9A-2 of this code. Nothing in this subsection prohibits a Hope
>
> (continued . . .)

26

on this finding, the circuit court agreed with Respondents' argument and ruled that the Act "trades a student's fundamental right to a public education for a sum of money. Students will not be protected from for-profit entities or parents that do not use these funds for providing an adequate education." We disagree.

The Hope Scholarship Program is entirely voluntary. No family is forced to participate and each student-recipient may leave the program and enroll in public school at any time. Pursuant to article XII, section 1 of the West Virginia Constitution, the Legislature must provide for a thorough and efficient system of free schools. Thus, public education is free to all West Virginia children. The Act does not change that, and it does not require any family or student to leave public school and take part in the program. Therefore, we find that this voluntary program does not require a student to trade away their public education for a "sum of money."

Similarly, there is no basis for the circuit court's finding that "[s]tudents will not be protected from for-profit entities or parents that do not use these funds for providing an adequate education." This conclusion is at odds with the plain language of the Act which provides that Hope Scholarship funds are placed into state-controlled and state-audited savings accounts that "may only be used" for specific educational purposes. *Id.* §

Scholarship student from using the funds deposited in his or her account on both services provided by a public school or district and other qualifying expenses as provided for in § 18-31-7 of this code.

18-31-7(b). As noted by Petitioners, parents do not receive the money to use as they choose: "Hope Scholarship funds may only be used for educational purposes . . . [and] may not be . . . shared with a parent or student in any manner." *Id.* § 18-31-7(b)-(c). Further, the Act provides that the Hope Scholarship Board has the authority to audit and ban any education service provider who has misused Hope Scholarship funds. *Id.* § 18-31-10(c)-(d). Thus, we find that the circuit court's speculative conclusion that "[s]tudents will not be protected from for-profit entities or parents that do not use these funds for providing an adequate education," is inconsistent with the plain language of the Act.

Based on the foregoing, we find that the circuit court abused its discretion by ruling that the Act impinges on a child's fundamental right to an education by trading "a student's fundamental right to a public education for a sum of money." Because we find that the Act does not impinge on a child's fundamental right to an education in this manner, we conclude that our strict scrutiny test does not apply to this issue.

### 2. Reducing Funds Available to Public Schools

Next, the circuit court ruled that the Act impinges on a child's fundamental right to an education by "reducing the funds available to public schools through the state-incentivized reduction in public school enrollment." It arrived at this conclusion based on the following factual findings:

> Because state funding for public education is based in large part on student enrollment, [the Hope Scholarship Program] will result in a reduction in public school funding. . . . This reduction in funding will occur without a reduction in fixed costs—libraries, administration, maintenance, and numerous other expenses that do not decrease with each individual

28

student who takes a voucher. . . . Variable costs, including the amount necessary to pay teachers' salaries, will also not decrease at a pace commensurate with the departure of students.

Petitioners assert that the Act does not reduce funds available to public schools. Rather, the Act is funded from a new, general revenue appropriation that is "in addition to all other amounts required by [Article 9A of Chapter 18 of the West Virginia Code]," that is, funding separate from and in addition to the school funding formula. W. Va. Code § 18-9A-25(a). Petitioners argue that the circuit court's analysis relies entirely on the fact that the school funding formula partially depends on public school enrollment, which the circuit court found will decline because the Hope Scholarship incentivizes students to leave public schools. However, even assuming some drop in enrollment, Petitioners argue that Respondents failed to demonstrate, and the circuit court failed to address, whether the Act will reduce public school funding "not just by some amount, but by an amount large enough to cross the [article XII, section 1] constitutional line." Petitioners claim that under the circuit court's ruling, any decrease in public school funding, no matter how minimal, would infringe on the right to a thorough and efficient system of free schools. Finally, Petitioners note that even if public school *enrollment* decreases, whether public school *funding* will actually decline depends on an independent decision of the Legislature that is not controlled in any fashion by the Act.

We agree with Petitioners and find that the circuit court's ruling was erroneous for two main reasons: 1) the Act does not contain any language that mandates a reduction in public school funding; and 2) even assuming the Act did eventually, in future

29

school years, result in decreased public school enrollment, the circuit court did not address how such a decrease would result in the Legislature failing to comply with its article XII, section 1 duty to provide a thorough and efficient system of free schools.

First, it is undisputed that the Act does not contain any language that mandates a reduction in public school funding. The Act's funding comes from a new, general revenue appropriation which is "in addition to all other amounts" required under Article 9A of Chapter 18 of the West Virginia Code for public schools. *Id.* § 18-9A-25(a). Thus, it is clear that the Act does not directly reduce funds available for public schools.

For that reason, Respondents relied on a series of hypothetical harms that the Act *could possibly* produce: the Hope Scholarship Act *could* cause students to leave the public school system; this decrease in enrollment *could* render the current school funding formula inadequate to fund our public schools; the Legislature, at that time, *could* fail to adjust the school funding formula or *could* fail to supplement school funding in some other fashion, leading to a violation of article XII, section 1.

We again emphasize that Respondents brought a facial challenge to the constitutionality of the Act and had to "establish that no set of circumstances exists under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Lewis*, 185 W. Va. at 691, 408 S.E.2d at 641. We find that the hypothetical harms that the Act *might possibly* produce are insufficient to support the circuit court's ruling that the Act is facially unconstitutional.

Article XII, section 1 of the West Virginia Constitution requires the Legislature to provide for a thorough and efficient system of free schools. Sufficient funding is implicit in the definition of a thorough and efficient system of public schools. *Pauley*, 162 W. Va. at 706, 255 S.E.2d at 877. We agree with Petitioners' argument that whether public schools will be sufficiently funded in the event of a decrease in public school enrollment, regardless of the causes or contributing factors to such decline, depends on an independent decision of the Legislature—that decision is not dictated by any provision of the Act. Importantly, there is no ceiling in the school funding formula and the Legislature may adjust it in any manner it deems appropriate to meet its constitutional obligation to provide a thorough and efficient system of free schools if faced with an enrollment decrease. As this Court has noted, the Legislature "is free to amend the [school funding formula], or to replace it with another provision, so long as any new statute meets constitutional muster as set out in article twelve, section one, article ten, section five, and our cases interpreting these provisions." *W. Va. Education Assoc. v. Legislature*, 179 W.Va. 381, 382 n. 2, 369 S.E.2d 454, 455 n.2 (1988).[22]

---

[22] Indeed, the Legislature has recently made such adjustments to the school funding formula to address possible funding deficiencies to cover transportation costs in sparsely populated counties. In 2020, the Legislature adopted W. Va. Code § 18-9A-7a, which provides:

> (a) The Legislature finds that the present method of calculating the allowance for service personnel in §18-9A-5 may not provide sufficient funding to meet the student

(continued . . .)

Additionally, if the Legislature should fail to sufficiently fund public schools due to a decrease in public school enrollment, such that it is no longer complying with its duty under article XII, section 1 to provide a thorough and efficient system of free schools, Respondents could challenge such inaction by the Legislature *at that time*. This Court has addressed similar challenges involving claims of actual harm under article XII, section 1.

In *Pauley*, parents of children attending public schools in Lincoln County alleged that the State's system for financing public schools was unconstitutional because it denied their children the "thorough and efficient" education required by article XII, section 1, and denied them equal protection of the law. 162 W. Va. at 673, 255 S.E.2d at 861. In another article XII, section 1 case, the West Virginia Board of Education filed a writ of mandamus after the Governor ordered that, as part of a statewide budget cut, public education funding would be reduced by 2%. *State ex rel. Bd. of Educ. of Kanawha Cnty. v. Rockefeller*, 167 W. Va. 72, 281 S.E.2d 131 (1981). The Court held in syllabus point two of *Rockefeller* that "[b]ecause of public education's constitutionally preferred status in

transportation needs of lower-population density districts covering a large geographic area.

(b) The State Board of Education shall propose revisions to the calculation of the allowance for service personnel in §18-9A-5 to provide additional funded service personnel positions for the districts described in subsection (a) of this section and shall report the proposal to the Legislature before September 1, 2020.

this State, expenditures for public education cannot be reduced . . . in the absence of a compelling factual record to demonstrate the necessity therefor." *Id.*

Both *Pauley* and *Rockefeller* are easily distinguishable from the instant case. In the former, the parents alleged that the school funding formula itself was so deficient that it failed to provide their children with the constitutionally mandated thorough and efficient education. In the latter, the aggrieved parties challenged an executive order reducing expenditures already authorized by the Legislature for public education. Those cases did not involve a series of hypothetical harms that *might* occur, which *might*, if the Legislature failed to act, result in a violation of article XII, section 1.

In sum, we find that the circuit court abused its discretion by ruling that the Act impinges on a child's fundamental right to an education by "reducing the funds available to public schools through the state-incentivized reduction in public school enrollment." The Legislature has a Constitutional duty, through its budgetary process, to fund a thorough and efficient system of free schools. The Act does not modify that duty, nor does it take money directly from the school funding formula to pay for the Hope Scholarship Program. Because we find that the Act does not impinge on a child's fundamental right to an education by "reducing the funds available to public schools through the state-incentivized reduction in public school enrollment," we conclude that our strict scrutiny test does not apply to this issue.

**C. Spending Public Funds on Non-Public Education**

Respondents contend that the Act is unconstitutional because it directs public funds to be spent on non-public education. The circuit court agreed, concluding that the Act violates article XII, sections 4 and 5, and article X, section 5 of West Virginia's Constitution because, in the circuit court's view, such provisions "require that state taxation and funding pay only for public K-12 education."

We find that this conclusion is contrary to the plain language of our Constitution. Article XII, section 4 provides that the "*School Fund*" shall be dedicated to support "free schools . . . and to no other purpose whatever." (Emphasis added). Article XII, section 4 does not contain any prohibition on the Legislature using general revenue funds to support educational initiatives in addition to its article XII, section 1 duty to provide a through and efficient system of free schools. *See* Syl. Pt. 1, in part, *Foster*, 155 W. Va. 619, 186 S.E.2d 837 ("[T]he legislature has the authority to enact any measure not inhibited [by the West Virginia Constitution]."). As we have already recognized, the Hope Scholarship Program's funding comes from a new, general revenue appropriation that is "in addition to all other amounts" needed for public schools. W. Va. Code § 18-9A-25(a). The Hope Scholarship Program is not funded from the "School Fund." Because it does not take any money from the "School Fund," and because article XII, section 4 does not prohibit the Legislature from using general revenue funds for additional educational

34

initiatives, we find that the circuit court abused its discretion by concluding that the Act violates article XII, section 4.[23]

Similarly, article XII, section 5 and article X, section 5, do not prohibit the Legislature from using general revenue funds for the Hope Scholarship Program. Article XII, section 5 provides four ways that the Legislature "shall provide for the support of free schools;"[24] it does not contain any restrictive language stating that the Legislature's general taxation authority may *only* be used for public education. The circuit court's erroneous finding that article XII, section 5 "grants a broad mandate to the Legislature to use general

---

[23] The North Carolina Supreme Court rejected a similar argument, finding that:

> Insofar as the General Assembly appropriates a portion of the State's general revenues for the public schools, Section 6 mandates that those funds be faithfully used for that purpose. Article IX, Section 6 does not, however, prohibit the General Assembly from appropriating general revenue to support other educational initiatives. *See Preston*, 325 N.C. at 448–49, 385 S.E.2d at 478 ("All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution." (citations omitted)). Because the Opportunity Scholarship Program was funded from general revenues, not from sources of funding that Section 6 reserves for our public schools, plaintiffs are not entitled to relief under this provision.

*Hart*, 774 S.E.2d at 289.

[24] The four ways the Legislature shall provide for the free schools under article XII, section 5, are: 1) interest from the School Fund, 2) proceeds from forfeitures and fines, 3) general taxation, and 4) permitting, by statute, localities to raise their own funds for their schools. W. Va. Const. art. XII,§ 5.

taxation authority to provide only for free schools," is inconsistent with the plain language of the provision and with the Legislature's authority to enact any measure not inhibited by the Constitution. *See* Syl. Pt. 1, *Foster*.

Additionally, article X, section 5 does not prohibit the Legislature from using general revenue funds to support the qualifying expenses specified in the Hope Scholarship Act. *See* W. Va. Code § 18-31-7. Article X, section 5 provides:

> The power of taxation of the Legislature shall extend to provisions for the payment of the state debt, and interest thereon, the support of free schools, and the payment of the annual estimated expenses of the state; but whenever any deficiency in the revenue shall exist in any year, it shall, at the regular session thereof held next after the deficiency occurs, levy a tax for the ensuing year, sufficient with the other sources of income, to meet such deficiency, as well as the estimated expenses of such year.

W. Va. Const. art. X, § 5.

The Hope Scholarship Program's funding comes from the "general fund." Thus, its funding is part of "the annual estimated expenses of the State," which is permissible under article X, section 5. As with the other two constitutional provisions considered herein, article X, section 5 does not prohibit the Legislature from funding the Hope Scholarship Program.

Based on the foregoing, we find that the circuit court abused its discretion by ruling that the Act violates article XII, sections 4 and 5, and article X, section 5.

### D. The West Virginia Board of Education's Authority

36

According to article XII, section 2, "[t]he general supervision of the free schools of the State shall be vested in the West Virginia board of education which shall perform such duties as may be prescribed by law." W. Va. Const. art. XII,§ 2, in relevant part. The circuit court found that the Act violates this provision, reasoning:

> [The Act] unconstitutionally interferes with the Board of Education's supervisory and rule-making authority over public funds spent to educate the state's children by creating a separate Hope Scholarship Board to supervise spending of public funds for vouchers. [The Act] unconstitutionally restricts the WVBOE's exercise of academic and financial oversight over the use of these funds, despite the fact that [Hope Scholarship] funds flow directly through the [West Virginia Department of Education].

We disagree. The plain language of article XII, section 2 provides that the Board of Education has constitutional authority over the "general supervision of the free schools of the State[.]" *Id.* It does not grant the Board of Education authority over educational initiatives the Legislature chooses to enact outside of the free school system. Thus, we find the circuit court abused its discretion by ruling that the Act violates article XII, section 2.

### E. Special Law

Finally, we readily dispose of the contention that the Act is a special law. The circuit court noted that the "West Virginia Constitution has a strong presumption against laws that treat people differently, preferring generally applicable laws." It ruled that the Act improperly creates two classes of students: "students in private school or homeschooling who have to pay for public school resources—the [Hope Scholarship]

37

recipients—and those who do not—students without [the Hope Scholarship]." Additionally, the court found that the antidiscrimination protections that are available to public school students "are not available to students receiving public funds for private education expenditures under the [Hope Scholarship]."

Petitioners assert that the Act is not a special law because "it does not treat some people differently than others, or exempt some from the treatment others are getting." Petitioners state that all families with school-aged children "have the same choice whether to apply, are subject to the same eligibility criteria, must follow the same spending restrictions, and receive the same scholarship amounts." Additionally, Petitioners argue that the Act "does not create special hurdles for anyone. It applies uniformly to all families who wish to take advantage of its provisions." We agree.

This Court addressed our review of whether an action of the Legislature constitutes special legislation in syllabus point seven of *Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351:

> In due recognition of fundamental principles relating to the separation of powers among the legislative, executive and judicial branches of government, courts recognize the power of the legislature to make reasonable classifications for legislative purposes. Courts are bound by a presumption that legislative classifications are reasonable, proper and based on a sound exercise of the legislative prerogative. *If a statute enacted by the legislature applies throughout the state and to all persons, entities or things within a class, and if such classification is not arbitrary or unreasonable, the statute must be regarded as general rather than special.* In making classifications for legislative purposes, a wide range of discretion must be conceded by the courts to the legislature. In any case of doubt, courts must favor a construction of a statute which will result

> in its being regarded as general rather than special. *A statute must be regarded as general rather than special when it operates uniformly on all persons, entities or things of a class.* A law which operates uniformly upon all persons, entities or things as a class is a general law; while a law which operates differently as to particular persons, entities or things within a class is a special law.

(Emphasis added).

We also explained that "the 'special legislation' prohibition is essentially an equal protection clause." *State ex rel. Cooper v. Tennant*, 229 W. Va. 585, 605, 730 S.E.2d 368, 388 (2012) (internal citation omitted). Moreover, the special legislation prohibition

> serves to prevent the arbitrary creation of special classes, and the unequal conferring of statutory benefits. A legislative enactment in order to be valid under this clause, must operate alike on all persons and property similarly situated. As long as a statute applies uniformly upon a class, and as long as the classification utilized is neither arbitrary, nor unreasonable, the statute is general.

*State ex rel. City of Charleston v. Bosely*, 165 W. Va. 332, 339-40, 268 S.E.2d 590, 595 (1980).

We find that the Act applies to all families in the state with school-aged children who choose to participate. All families applying for the Hope Scholarship Program must agree to the same terms, including that they will: 1) "provide an education for the eligible recipient in at least the subjects of reading, language, mathematics, science, and social studies;" 2) "use the Hope Scholarship funds exclusively for qualifying expenses;" 3) "comply with the rules and requirements" of the program; and 4) "afford the [eligible recipient] opportunities for educational enrichment such as organized athletics,

39

art, music, or literature." W. Va. Code § 18-31-5(d)(3). Further, all families whose applications are approved and who continue to meet the program requirements throughout the school year receive the same scholarship amount.

Because the Act operates uniformly on all families who voluntarily choose to participate, we find that under our holding in syllabus point seven of *Gainer*, the Act must be considered a general law.[25] Thus, we find that the circuit court abused its discretion by ruling that the Act is a special law.

## IV. CONCLUSION

Accordingly, for the reasons stated above, we find that the circuit court erred by finding the Act unconstitutional, and abused its discretion by permanently enjoining the State from implementing the Act. We therefore reverse the circuit court's July 22, 2022, order and dissolve the permanent injunction it entered. We remand this matter to the circuit court with directions for it to enter judgment in Petitioners' favor.

Reversed and Remanded with Directions.

---

[25] We further agree with Petitioners that the circuit court erred by finding that the Act unconstitutionally differentiates "students protected from all discrimination, and students unprotected from most types of discrimination." As Petitioners note, the Act does not change the status quo. It merely states that participating schools and education service providers are subject to the same antidiscrimination laws which they were subject to prior to the Act being passed. *See* W. Va. Code § 18-31-11(d).